## UNITED STATES DISTRICT COURT

## DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

        **Plaintiff**

                                    Case No.  **16-CR-4571 MCA**

    -vs-

**GUY ROSENSCHEIN,**

        **Defendant**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on defendant Guy Rosenschein's opposed Motion to Reopen the November 14, 2016 Detention Hearing, filed on December 16, 2016.  Doc. 21.  Dr. Rosenschein asserts that there is information that was not known to him at the November 14, 2016 detention hearing that has a material bearing on whether there are conditions of release that will reasonably assure his appearance and the safety of the community.  The Court finds that the fact that Dr. Rosenschein's sister is willing to act as third party custodian under strict conditions may be sufficient new information to reopen the detention hearing.  Nonetheless, the Court still finds that there are no conditions of release that will reasonably assure Dr. Rosenschein's appearance as required, and also reasonably assure the safety of the community.  The Court therefore grants Dr. Rosenschein's motion to reopen the detention hearing but denies his request to be released to the third party custody of his sister.

### I.      Procedural Background

On November 9, 2016, the United States filed a criminal complaint against Dr. Rosenschein alleging that he had possessed and distributed child pornography, in violation of 18

U.S.C. §§ 2252(a)(2) and 2252(a)(4)(B).  Doc. 1.  Dr. Rosenschein first appeared before the

Court on November 10, 2016.  Doc. 4.  The Court held a detention hearing on November 14,

2016.  Doc. 7.  At the hearing, the Court found that Dr. Rosenschein had not introduced

sufficient evidence to rebut the presumption under 18 U.S.C. § 3142(e)(3)(E) that no condition

or combination of conditions reasonably would assure the appearance of the Dr. Rosenschein as

required and the safety of the community.  Doc. 8 at 2; Doc. 17 at 10.  The Court further found

that Dr. Rosenschein was a flight risk because of his significant ties to another country, and

because he had two airplanes, a helicopter, a pilot's license, and significant assets, giving him the

means to leave the country relatively easily.  Doc. 8 at 2–3; Doc. 17 at 10–11.  The Court also

found that Dr. Rosenschein was a danger to the community based on the nature of the charges

against him, the allegation in the complaint that Dr. Rosenschein armed himself with a firearm

when officers came to execute the search warrant on his residence, as well as the allegation that a

16-year-old boy in boxer shorts was in his bed, whom Dr. Rosenschein falsely said was his

nephew, but whom he later admitted was a former patient.  *See* Doc. 8 at 2–3; Doc. 17 at 10.

On December 7, 2016, a federal grand jury returned a three-count indictment against Dr.

Rosenschein.  Doc. 13.  Counts 1 and 2 accuse Dr. Rosenschein of distributing and attempting to

distribute child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2), (b)(1), and 2256.  *Id.* at

1–2.  Count 3 accuses him of possessing child pornography involving prepubescent minors, in

violation of 18 U.S.C. §§ 2252A(a)(5)(B), (b)(2), and 2256.  *Id.* at 2.

Dr. Rosenschein now seeks to reopen the detention hearing under 18 U.S.C. § 3142(f)(2),

alleging that new information is available that has a material bearing on whether he is a flight

risk and/or a danger to the community.  *See* Doc. 21.  Specifically, he says that he has learned

since the last detention hearing that his sister is willing to serve as a third party custodian for him. *See id.* at 4. He also says that he did not make his "life story" known to the Court, so the Court made its determination without knowing about his ties to the community and his law-abiding life. *See id.* The government opposes Dr. Rosenschein's motion. *See* Doc. 28. The government argues that Dr. Rosenschein has not met the criteria for reopening a detention hearing under § 3142(f)(2). *Id.* at 6–8. The government also argues that the Dr. Rosenschein has not rebutted the presumption that he is both a flight risk and dangerous if he is released. *Id.* at 8. But if Dr. Rosenschein has rebutted that presumption, the government further argues that he still poses a flight risk and a danger to the community if released to his sister's custody based on the factors the Court is required to consider. *Id.* at 8–13.

The Court held a hearing on January 5, 2017. After considering the parties' submissions, the pretrial services report, the record of the November 14, 2016 hearing, the evidence presented at the January 5, 2017 hearing, as well as the arguments of counsel, the Court grants Dr. Rosenschein's motion to reopen the detention hearing but denies his request to be released to his sister's custody.

## II.   Factual Findings

### A.  The Investigation of Dr. Rosenschein

Dr. Rosenschein first came to the attention of law enforcement last summer. On July 31, 2016, and again on August 8, 2016, the National Center for Missing and Exploited Children (NCMEC) received tips from Chatstep.com that a user identified only as "Carlo" had uploaded two images of child pornography and sent them to another user. The first image was transmitted on July 31, 2016, and the second one was transmitted on August 8, 2016. The images appeared

to be of the same male child, approximately 13 to 15 years old, and depict him lying on a distinctive bedspread.  In one image the child was lying naked, face down, and an adult male was placing his penis inside the child's anus.  In the second image, the child is laying on his back, with his knees drawn up toward his chest.  An adult male penis is penetrating the child's anus.

NCMEC forwarded the tips to the New Mexico Attorney General's Office Internet Crimes Against Children (ICAC) Task Force.  Bernalillo County Sheriff's Office (BCSO) Detective Kyle Hartsock initiated a criminal investigation.  Detective Hartsock issued subpoenas to the internet service provider who owned the IP addresses used to upload the images.  The subpoenas required the provider to identify the subscriber who was assigned the IP address at the date and time both uploads took place.  The internet service provider identified the subscriber in both instances as Guy Rosenschein, and both IP addresses resolved to Dr. Rosenschein's home address in Albuquerque.

On November 8, 2016, Detective Hartsock and other officers executed a state-issued search warrant at Dr. Rosenschein's residence in Albuquerque.  Law enforcement officers arrived at Dr. Rosenschein's residence at approximately 6:00 a.m.  Because Dr. Rosenschein did not respond to their knocks and announcements, the officers forced entry into the home.  When the officers first entered the home, Dr. Rosenschein came out onto a second-floor landing in his bathrobe.  He then ran back into the master bedroom, armed himself with a firearm, and came back out.  After a short time, he surrendered peaceably.  The only other person the officers found in the house was a 16-year-old boy, identified as John Doe 1 at the evidentiary hearing, who was in Dr. Rosenschein's bed (in the master bedroom) wearing only his underwear.  Dr. Rosenschein

initially identified John Doe 1 as his nephew, *see* Def. Exh. B at 3, but he later was identified as a former patient unrelated to Dr. Rosenschein.

Dr. Rosenschein had performed several surgeries on John Doe 1, and had flown him to various places around the country, unaccompanied by his parents. Dr. Rosenschein had John Doe 1 get a passport because Dr. Rosenschein wanted to take John Doe 1 to his residence in Andorra, Spain, to go skiing. Dr. Rosenschein told Detective Hartsock that John Doe 1 often stays in his guest bedroom, and that they do not have a sexual relationship.

John Doe 1 was interviewed by a trained child/adolescent forensic interviewer. John Doe 1 reported that there had been no inappropriate touching or sexual behavior between him and Dr. Rosenschein. Although John Doe 1 reported that he slept in the guest bedroom the night before the search warrant was executed, law enforcement officers found him in Dr. Rosenschein's bed in the master bedroom. Notes taken during the interview and apparently quoting John Doe 1 state, "went to his house, spent the night, woke up to beep, beep and 'something' crash." The notes further state, "I went to his bedroom because he got called Guy." FBI Special Agent Ross Zuercher recalled that John Doe 1 had told one of the detectives that he was in Dr. Rosenschein's bed because he had gotten cold. A review of John Doe 1's cell phone did not reveal any child pornography or inappropriate conduct by Dr. Rosenschein.

John Doe 1's clothing and personal effects were in the guest bedroom. John Doe 1's snowboards and boots were in Dr. Rosenschein's garage. John Doe 1 stayed at Dr. Rosenschein's house with his parents' permission. John Doe 1's parents were not aware of any inappropriate touching or sexual behavior between Dr. Rosenschein and their son. John Doe 1's

mother stated that John Doe 1 had had problems in school, and she believed Dr. Rosenschein was a good influence on John Doe 1.

During the execution of the search warrant, law enforcement officers seized numerous laptop computers, smart phones, iPads, and electronic storage devices. *See* Def. Exh. A. The forensic analysis of most of these devices has not been completed. Among the items seized, however, was a thumb drive attached to a key chain found in Dr. Rosenschein's car. The thumb drive contained approximately 1120 images and videos of child pornography. Forty-one of the images have been linked to previously identified children. The general focus of the images on the thumb drive was of young boys.

After advising Dr. Rosenschein of his *Miranda* rights, which Dr. Rosenschein agreed to waive, FBI Special Agent Mac McCaskill interviewed Dr. Rosenschein. Dr. Rosenschein said that he was familiar with Chatstep, and that he had sent sexual photographs to others on Chatstep although he was not aware of whether any of those photographs were of anyone underage. He admitted that he may have used the username "Carlo" although he said that he usually used the username "Steve." He denied ever having engaged in sexual activity with an underage person. He admitted to having had the thumb drive in his possession for several years. He said that he had not looked at the thumb drive for several years. Agent Zuercher thought that the forensic analysis of the thumb drive showed that the last access date was approximately three or four years ago.

One of Dr. Rosenschein's former colleagues sold Dr. Rosenschein his residence, and she told Agent Zuercher that there was a "secret room" in the residence underneath the staircase and behind the closet. Agent Zuercher determined that law enforcement officers overlooked this

room during the execution of the first search warrant.  He obtained a second search warrant to reenter the house and search this room.  There were two safes in the room.  In one safe, Agent Zuercher found five printed photographs, four of which depicted a young "ethnic" boy, approximately 13 to 16 years old, who was naked in a shower.  Agent Zuercher characterized the boy as "posing" for the photograph, with his foot forward and smiling into the camera.  "Avril 1994" was printed on the back of the photos.  Agent Zuercher also found some flight logs, one of which showed that Dr. Rosenschein flew to Cambodia in March 1994.  Dr. Rosenschein went to Cambodia with the organization Aviation Sans Frontières for a humanitarian project.

A forensic analysis of an iPhone 3 seized during the execution of the first search warrant disclosed a series of chat conversations using the Yahoo Messenger service.  The username associated with the account was "cambodia1994."  This was significant to Agent Zuercher because of the photos of the nude "ethnic" boy were dated April 1994, and because Dr. Rosenschein's flight logs showed that he had flown to Cambodia in March 1994.  The chat conversations disclosed that "cambodia1994" said he was a 15-year-old boy who worked at a club and was regularly raped by adult men.  "Cambodia1994" asked many sexually explicit questions about anal and oral sex, and said that he was being paid to engage in sexual acts with adult men.  "Cambodia1994" said that his name was "Steve," which also was significant to Agent Zuercher because Dr. Rosenschein had told Agent McCaskill that he mostly used the username "Steve."

Government's exhibits 1, 2, and 3 are samples of the chat conversations.  Government exhibit 3 suggests that "cambodia1994" received child pornography using the messenger service, and also offered to send pictures of child pornography.  "Cambodia1994" said, "Thx for vids is

7

the mm raping the boy with a white cap?"  Gov. Exh. 3 at 1.  Later in the chat, "cambodia1994"

offers to "send pics but vids don't go through," and that he would continue to try to send "pics."

*Id.*  The chats date from 2010 and 2011.  This same Yahoo Messenger account also was located

on an iPad seized during the execution of the first search warrant, but the forensic analysis of the

iPad is not yet complete.  The most recent access date on the Yahoo Messenger account was May

2015.

### B.  Dr. Rosenschein's Background

Dr. Rosenschein was born in France in 1953, and lived in and around Paris until

approximately 1995.  He received his medical degree in France, and specialized in pediatric

surgery and pediatric urology.  He moved to New York in 1995 and obtained his license to

practice medicine in the United States.  He has worked as a physician in New York, Arkansas,

Missouri, and New Mexico.  He became a United States citizen in 2004.  He carries both a

French and United States passport, both of which were seized during the execution of the first

search warrant.  He has lived in Albuquerque since 2012, at which time he started working for

Presbyterian as a pediatric surgeon earning approximately $20,000 per month.

Dr. Rosenschein owns two homes in Florida, his home in Albuquerque, and apparently

also owns a residence in Spain.  He owns two airplanes and a helicopter, and is a pilot.  The

aggregate worth of his planes, helicopter, and residences in the United States is almost $1.6

million.  The Court has no information regarding his liquid assets, or the worth of any property

he may own outside the United States.  He has flown extensively, both domestically and

internationally.  He speaks French and English.  He reported to Pretrial Services that he travelled

internationally two or three times per year, to both Israel and France.

Dr. Rosenschein's parents are deceased.  His father died in France, and his mother moved to the United States when her husband died.  Dr. Rosenschein, with some help from his sister, cared for his mother until her death.  Dr. Rosenschein has one sibling, a sister, who lives with her husband in Arcadia, California.  Although Dr. Rosenschein and his sister grew up in the same household, she had not lived with him since she was about twenty.  They both moved to the United States in the mid-nineties, but she moved to California, and he moved to New York. During the time that Dr. Rosenschein lived in Albuquerque, his sister saw him about two or three times per year, and spoke to him about once a month.  Dr. Rosenschein has no children, and although he reported to Pretrial Services a relationship with a woman since 1996, there was no mention of this woman during the hearing.

Dr. Rosenschein's sister, Annie Rosenschein-Bars, offered to act as third party custodian for Dr. Rosenschein.  Ms. Rosenschein-Bars is a retired French teacher, and her husband is a professor at the University of Southern California.  They own a three-bedroom home in Arcadia, California that is within walking distance to an elementary school.  Ms. Rosenschein-Bars was completely unaware of her brother's possession of child pornography, his distribution of child pornography, his sexual attraction to young boys, or his sexually explicit chat conversations regarding the rape of teenage boys, all of which she found surprising and appalling.  She is at home most of the time although she occasionally runs errands, and her husband also mostly works at home.  She testified that both she and her husband would be willing to report to Pretrial Services any violation by Dr. Rosenschein of any conditions of release.

Dr. Rosenschein also presented the testimony of one of his neighbors.  His neighbor said that he saw Dr. Rosenschein nearly every day, until his arrest, and was completely unaware of

Dr. Rosenschein's possession of child pornography, his distribution of child pornography, his sexual attraction to young boys, or his chats regarding the violent rape of young boys. He nonetheless believed that Dr. Rosenschein was a good man. The neighbor has 17-year-old twins, a son and daughter, both of whom Dr. Rosenschein had helped when they had a medical problem. The neighbor's son mowed Dr. Rosenschein's lawn and had been to his house. His son also had flown with Dr. Rosenschein a couple of times. Neither of his children ever reported that Dr. Rosenschein had acted inappropriately with them in any way. The neighbor still would not have any problem with his son being alone with Dr. Rosenschein.

Dr. Rosenschein's colleagues at Presbyterian Hospital uniformly described Dr. Rosenschein as a good man and a good doctor, and had never observed him do anything inappropriate or unprofessional. However, an iPhone 6 seized from Dr. Rosenschein contained approximately 12 photos on it depicting three children—two infants and one child just entering puberty—in a medical setting. The photos of the two infants, one male and one female, showed their genitals. The photos of the older child—which Agent Zuercher thought probably was a girl, although no faces were shown—were of the child's breasts. Presbyterian Hospital policies prohibited doctors from taking photos of patients using their personal phones. The hospital had strict procedures that were to be followed if a doctor wanted or needed to take photos of a patient for professional reasons. Presbyterian Hospital fired Dr. Rosenschein approximately a day after he was taken into federal custody. Dr. Rosenschein also lost his hospital privileges as well as his medical license.

### C.  The State Case and Dr. Rosenschein's Arrest on Federal Charges

Dr. Rosenschein was arrested on November 8, 2016 on state charges of possession and distribution of child pornography.  *See* Def. Exh. B.  He was released the next day on conditions of release.  *See* Def. Exh. D.  The docket in the criminal case suggests that the prosecutor did not object to Dr. Rosenschein's release on conditions.  *See* Def. Exh. C.  Immediately after his release, Dr. Rosenschein went to the store to purchase a new phone and laptop, using his same telephone number on his new phone.  He then returned to his home.  He was taken into federal custody on November 10, 2016.  There was no evidence that Dr. Rosenschein violated the conditions of his state release order during the approximately 24 hours between the time he was released from state custody and the time he was taken into federal custody, although apparently he still had one firearm in his home that had not been found and seized during the execution of the first search warrant.

### III.   Discussion

### A.  Grounds for Reopening the Hearing

Although a judicial officer may reopen a detention hearing, she may only do so if she "finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community."  18 U.S.C. § 3142(f)(2).  Here, Dr. Rosenschein offers two grounds for reopening the hearing:  (1) information that his sister will act as third party custodian, and (2) information relating to his ties to the United States and his law-abiding life.  Only the first ground is information "not known to the movant" at the November 14, 2016 hearing.  Although

Dr. Rosenschein did not disclose his ties to the United States and otherwise fully inform the Court of his "life story," he certainly knew of those ties and that story at the time of the first hearing.  That story, consequently, is not a basis for reopening the hearing.

The government does not dispute that Dr. Rosenschein did not know his sister was willing to act as third party custodian at the hearing on November 14, 2016.  Although this information arguably has a material bearing on whether there are conditions of release that will reasonably assure Dr. Rosenschein's appearance at future proceedings and/or reasonably assure the safety of the community sufficient to reopen the hearing, the Court still finds that detention is warranted based on the entire record.

## B.  The Statutory Detention Factors Warrant Dr. Rosenschein's Continued Detention.

Under 18 U.S.C. § 3142, a defendant ordinarily is entitled to pretrial release, with or without conditions, unless the Court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e)(1).  Subsection (g) of § 3142 sets forth the general factors that the Court is to consider "in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(g).  They include the nature and circumstances of the charged offense, the weight of the evidence, the history and characteristics of the defendant, and the nature and seriousness of the danger posed by the defendant to the community if released. *Id.*

However, as noted above, a presumption of both flight risk and dangerousness arises in certain cases.  Under § 3142(e)(3)(E), "[s]ubject to rebuttal by the person, it shall be presumed

that no condition or combination of conditions will reasonably assure the appearance of the

person as required and the safety of the community if the judicial officer finds that there is

probable cause to believe that the person committed—(E) an offense involving a minor victim

under section . . . 2252A(a)(2) . . . of this title."

> Once the presumption is invoked, the burden of production shifts to the defendant. However, the burden of persuasion regarding risk-of-flight and danger to the community always remains with the government.  The defendant's burden of production is not heavy, but some evidence must be produced.  Even if a defendant's burden of production is met, the presumption remains a factor for consideration by the district court in determining whether to release or detain.

*United States v. Stricklin*, 932 F.2d 1353, 1354–55 (10th Cir. 1991).  Importantly, "[t]he concept

of safety of the community under § 3142(e) is not limited to the danger of physical violence, but

rather 'refers to the danger that the defendant might engage in criminal activity to the detriment

of the community.'"  *United States v. Boy*, 322 F. App'x 598, 600 (10th Cir. 2009) (quoting

*United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989)).

In counts 1 and 2, Dr. Rosenschein is charged under 18 U.S.C. § 2252A(a)(2).  The

presumption of both flight risk and dangerousness therefore applies.  For the purpose of this

motion, the Court will assume without deciding that Dr. Rosenschein has introduced sufficient

evidence to meet his burden of production.  Nonetheless, after considering the factors under 18

U.S.C. § 3142(g) and the presumption, I find by clear and convincing evidence that no condition

or combination of conditions will reasonably assure the safety of the community, and by a

preponderance of the evidence that no condition or combination of conditions will reasonably

assure Dr. Rosenschein's appearance as required.

    1. *Nature and Circumstances of the Offense Charged*

  The charges Dr. Rosenschein faces are serious, and the harm that such offenses perpetrate

upon children is "devastating." *Paroline v. United States*, 134 S. Ct. 1710, 1717 (2014).  Even if

the Court considers only the possession charge, being a "consumer" of child pornography

involving prepubescent children encourages others to sexually abuse young children to create the

pornography.  As the Supreme Court stated in 2014,

>   Three decades ago, this Court observed that "the exploitive use of children
> in the production of pornography has become a serious national problem." *New
> York v. Ferber*, 458 U.S. 747, 749 [] (1982).  The demand for child pornography
> harms children in part because it drives production, which involves child abuse.
> The harms caused by child pornography, however, are still more extensive
> because child pornography is "a permanent record" of the depicted child's abuse,
> and "the harm to the child is exacerbated by [its] circulation." *Id*.[] at 759 [].
> Because child pornography is now traded with ease on the Internet, "the number
> of still images and videos memorializing the sexual assault and other sexual
> exploitation of children, many very young in age, has grown exponentially."
> United States Sentencing Comm'n, P. Saris et al., Federal Child Pornography
> Offenses 3 (2012).

*Paroline*, 134 S. Ct. at 1716–17 (internal parallel citations omitted).  In describing the victim in

*Paroline*, the Court observed,

>   The full extent of this victim's suffering is hard to grasp.  Her abuser took
> away her childhood, her self-conception of her innocence, and her freedom from
> the kind of nightmares and memories that most others will never know.  These
> crimes were compounded by the distribution of images of her abuser's horrific
> acts, which meant the wrongs inflicted upon her were in effect repeated; for she
> knew her humiliation and hurt were and would be renewed into the future as an
> ever-increasing number of wrongdoers witnessed the crimes committed against
> her.

*Id.* at 1717.

  The evidence in this case indicates that Dr. Rosenschein possessed more than one

thousand images and videos of child pornography, many of which involve prepubescent minor

males.  Dr. Rosenschein kept these images literally at his fingertips—on a thumb drive attached to a key chain found in his vehicle.  Forty-one of the files on the thumb drive depicted previously-identified children.

Counts 1 and 2 charge Dr. Rosenschein with distributing child pornography, again involving a young boy.  These counts charge Dr. Rosenschein with further perpetuating the harm to the victim, not just by viewing the images and sustaining the market for such images, but by enlarging it.  Congress has determined that these offenses are sufficiently serious that the Court should presume that a defendant accused of these crimes is both a danger and a flight risk.  If convicted, Dr. Rosenschein faces a minimum mandatory statutory sentence of five years in prison on both counts 1 and 2, which is not insignificant for a man of 63.  Thus, the nature and circumstances of the offenses with which Dr. Rosenschein has been charged weighs heavily in favor of detention, not only because Dr. Rosenschein poses a continuing risk of danger to children, but also because the potential penalty is an incentive for him to abscond.

2.  *The Weight of the Evidence*

The evidence that Dr. Rosenschein knowingly possessed and distributed child pornography is substantial.  Dr. Rosenschein admitted that the thumb drive connected to his key chain was his, and that he had acquired it several years ago.  He admitted to using the name Carlo on the "chatstep.com" web site, which was the name and site used to transfer the two images identified in counts 1 and 2 of the indictment.  The IP address used to transfer the images was accessed by an account registered to Dr. Rosenschein.  A phone seized from Dr. Rosenschein's home office revealed a Yahoo Messenger account used to engage is sexually explicit conversations describing men raping young boys.  At least one chat, dating from 2010,

suggests that the account was used to transfer child pornography.  Thus, the weight of the evidence also weighs heavily in favor of detention.  Not only does it further demonstrate the risk of danger Dr. Rosenschein poses to children, but it also increases the risk that he will attempt to flee because of the likelihood of a conviction.

3.  *The History and Characteristics of Defendant*

Although Dr. Rosenschein does not have any prior criminal convictions, his personal history suggests that he is a danger to children, and that he is willing to use his position as a pediatric surgeon to gain access to minors for the purpose of engaging in inappropriate behavior. Dr. Rosenschein admitted that he sometimes is sexually attracted to underage males. Photographs and documents found in Dr. Rosenschein's home indicate that Dr. Rosenschein went to Cambodia in 1994 and had some type of contact with a boy approximately 13 to 16 years old, or at least photographed the boy posing nude in the shower.  Chat conversations on Dr. Rosenschein's phone indicate that Dr. Rosenschein at a minimum fantasizes about older men raping boys.  He had a nearly nude 16-year-old former patient in his bed when law enforcement officers came to his house to execute a search warrant.  Dr. Rosenschein at first lied about his relationship with the boy, claiming that the boy was his nephew, but later admitted that the boy was a former patient who regularly stayed with him.  Dr. Rosenschein also had several photographs on his phone that depict close-up views of genitalia in what appear to be a medical or hospital setting.  Presbyterian Hospital, where Dr. Rosenschein formerly was employed, does not permit physicians to take medical photographs on their personal phones.

Dr. Rosenschein also has substantial financial means.  He owns a home in Albuquerque, two homes in Florida, and a home or apartment in Spain.  He owns two airplanes and a

helicopter, and has a pilot's license.  He has flown extensively both in the United States and abroad.  He reported to Pretrial services that he travels internationally approximately two or three times per year, to both France and Israel.  He carries both a United States and French passport, although both passports were seized when he was arrested.  He also has substantial earning capacity as a pediatric surgeon and presumably has substantial liquid assets about which the Court has no information.  He speaks both French and English.  And although he claims that his most substantial ties are to the United States, he was born in France, he obtained his medical degree in France, he practiced as a doctor for many years in France, and he maintains his French citizenship.

Dr. Rosenschein's history and characteristics therefore weigh in favor of detention.  His personal history demonstrates that he is sexually attracted to young boys, and that he may be willing to take advantage of his position to gain access to them.  He fantasizes about violent sex between older men and young boys, and he admitted to being sexually attracted to minor boys.  Although Dr. Rosenschein has no criminal history, he admitted that he acquired the thumb drive containing more than 1100 images and videos of child pornography on it many years ago, his chats date back to 2010, and he had photos of a naked boy posing in a shower dated 1994, all of which establish that the recent charges against him are not an aberration.  Despite this history, Dr. Rosenschein was able to hide his predilection for young boys from his family, neighbors, friends and colleagues.  In addition, Dr. Rosenschein has substantial financial means, is well-educated, and has traveled internationally extensively.  If released to his sister's custody—who apparently has remained ignorant of her brother's longstanding attraction to underage boys—it would be nearly impossible to ensure that he not gain access to a smart phone or other electronic

device through which he could continue to access and/or distribute child pornography. And given his financial means, education, pilot's license, and history of international travel, he also could attempt to devise a way to leave the country surreptitiously.

### 4. *The Nature and Seriousness of Danger to Any Person or the Community if Defendant is Released*

The potential danger to children if Dr. Rosenschein is released is great. As noted above, it would be nearly impossible to ensure that Dr. Rosenschein not gain access to a smart phone or other device with which he could continue to obtain and distribute child pornography. Dr. Rosenschein's sister admitted that her brother had successfully hidden these crimes from her in the past. This in itself endangers the children who are the victims of child pornography. Although Dr. Rosenschein's counsel suggested at the hearing that the possession and distribution of child pornography is a victimless crime, both Congress and the Supreme Court disagree. As noted above, Congress has determined that defendants accused of distributing child pornography are presumed dangerous, and it did not impose any requirement on the number of images that must be distributed before the presumption applies. *See* 18 U.S.C. § 3142(e)(3)(E). And the Supreme Court has characterized the harm caused to the child victims of child pornography possession and distribution as "devastating." *See Paroline*, 134 S. Ct. at 1717. Thus, the risk that Dr. Rosenschein will possess or distribute child pornography if released is sufficiently dangerous to warrant his continued detention.

But there also is the danger that Dr. Rosenschein will attempt to engage in sexual contact with a minor, even if the minor is legally incapable of consenting to the contact. Dr. Rosenschein admitted to being sexually attracted to young boys, and he engaged in sexually explicit fantasy chats that described adult men raping a 15-year-old boy. That Dr. Rosenschein

had flown his 16-year-old former patient around the United States, allowed him to stay with him regularly, and promised him a skiing trip to Spain demonstrates that he understands how to "groom" children so that they trust him and will agree to spend time with him.  And although both John Doe 1 and Dr. Rosenschein denied having a sexual relationship, the fact that his former patient was found in his bed in only his underwear suggests that the relationship was not entirely platonic.  Although the boy was above the age of consent in New Mexico, *see State ex rel. Children, Youth & Families Dep't v. Paul P., Jr.,* 1999-NMCA-077, ¶ 10, 127 N.M. 492, 494, 983 P.2d 1011, 1013 ("Although, on its face, the statutory language 'perpetrated on a child thirteen to sixteen years of age' could be construed to include a sixteen-year-old victim, we have never given the language such an interpretation.  Rather, our cases have long held that criminal sexual penetration of a sixteen-year-old does not fall under similar statutory provisions."), he was below the age of consent in California, *see* CAL. PENAL CODE § 261.5 (West 2011).  Thus, the nature and seriousness of the danger Dr. Rosenschein poses to another person or the community also weighs in favor of detention.

**IT IS THEREFORE ORDERED** that defendant Guy Rosenschein's opposed Motion to Reopen the November 14, 2016 Detention Hearing (Doc. 21) is granted in part and denied in part.  The Court GRANTS Dr. Rosenschein's motion to reopen the hearing, but DENIES his request to be released to the third party custody of his sister.  Dr. Rosenschein shall remain in custody pending further proceedings.

DATED this 6th day of January, 2017

Laura Fashing
United States Magistrate Judge

19