UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       *Plaintiff*,

v.                                   Case No. 1:16-CR-4571 JCH

GUY ROSENSCHEIN,

       *Defendant*.

**DEFENDANT DR. ROSENSCHEIN'S REPLY IN SUPPORT
MOTION TO COMPEL PRODUCTION OF NCMEC MATERIALS**

COMES NOW Defendant Guy Rosenschein, through his counsel of record Rothstein

Donatelli LLP (Marc M. Lowry and Paul M. Linnenburger), and replies to the United States'

Response to Defendant's Motion to Compel Production of NCMEC Materials (Doc. 65).  For the

reasons discussed below, the requested materials are discoverable and the Court should order

their disclosure under U.S. Const. amend. V; U.S. Const. amend. VI; U.S. Const. amend. XIV;

Fed. R. Crim P. 16; and *Brady v. Maryland*, 373 U.S. 83 (1963).

    **I.**    **THE UNITED STATES' DISCOVERY OBLIGATION
        REACHES THE NCMEC MATERIALS IN QUESTION**

    **A.**    **NCMEC was the federal government entity that prompted
        this criminal prosecution, therefore NCMEC is a member
        of the "prosecution team" for purposes of discovery.**

NCMEC clearly satisfies the definition of a prosecution team member.  The United

States' attempt to evade its obligation to produce the requested NCMEC materials critical to the

constitutional defense of this case is based on the argument that NCMEC is not a "prosecution

team" member.  The Government's argument runs contrary to the Department of Justice's stated

policy to "err on the side of inclusiveness when identifying the members of the prosecution team

1

for discovery purposes." *United States v. Harry*, No. CR-10-1915, at * 9 (D.N.M. Oct. 10, 2014)

(Browning, J.) (quoting Department of Justice Memorandum Regarding Guidance for

Prosecutors Regarding Criminal Discovery from David W. Ogden, Deputy Attorney General, at

1, dated January 4, 2010).  Given the NCMEC is a prosecution team member, Dr. Rosenschein's

discovery motion should be granted.

The "prosecution team" is defined as all "federal, state, and local law enforcement

officers and other government officials participating in the investigation and prosecution of the

criminal case against the defendant."  Department of Justice Memorandum Regarding Guidance

on the Use, Preservation, and Disclosure of Electronic Communications in Federal Criminal

Cases at 1 n.2, dated March 30, 2011.  *See also Harry*, No. CR-10-1915, at * 9.  The United

States agrees with this basic test for identifying a member of the "prosecution team."  *See*

Response, Doc. 65, at p. 5 (quoting *United States v. Webb*, 651 F. Appx. 740, 744 (10th Cir.

2016) for the proposition that the "U.S. Attorney's Office is not required to disclose information

it is unaware of and that is in the possession of a separate federal agency *not involved in the*

prosecution or *investigation of the present case*") (emphasis added).

Binding law in this Circuit makes NCMEC is a federal law enforcement entity.  The

Tenth Circuit opinion in *United States v. Ackerman,* 831 F.3d 1292, 1308 (10th Cir. 2016)

unequivocally answered this question.  *Id*. ("Having determined that NCMEC is a governmental

entity").  Given that NCMEC participated in "the investigation and prosecution of the criminal

case" against Dr. Rosenschein, NCMEC is, undoubtedly, a member of the prosecution team in

this case.  *Id.*  One of NCMEC's core functions, identified within *Ackerman*, which NCMEC

fulfilled in this case, is to "operate the CyberTipline as a means of combating Internet child

sexual exploitation."  *Ackerman*, 831 F.3d at 1296 (discussing NCMEC's Congressional mandate

2

to support federal law enforcement).  Here, NCMEC acted as a government-sanctioned, investigator when it provided the CyberTipline report originating with Microsoft's PhotoDNA program to the New Mexico Attorney General's Office.  The NCMEC CyberTipline report forwarded to the New Mexico Attorney General is the foundational evidence supporting the Indictment in this case.  While the underlying data may have originated with Microsoft's PhotoDNA system, NCMEC took that information, investigated the IP address provided by Microsoft, and determined that the IP address associated with that report was owned by CenturyLink and rented to an individual who lived in Albuquerque, New Mexico.  That is how that report landed in this jurisdiction.[1]

While the United States, partially though reliance on the supplemental Declaration of John Shehan, Vice President of the Exploited Children Division ("ECD") at NCMEC (Doc. 72-1), attempts to minimize NCMEC's involvement by arguing that NCMEC, in this case, did not review the images submitted to detectives, this is not dispositive.  The United States cannot fairly argue that NCMEC's actions fall short of participating in thid investigation, just because NCMEC did not view the images involved in this case.  Without NCMEC's service as the national clearinghouse for CyberTipline reports generated by Microsoft, the criminal case against Dr. Rosenschein would have never materialized.  Given the investigative and law enforcement functions that Congress assigned to NCMEC, functions that the *Ackerman* panel clearly recognized, the Court should find that NCMEC is definitively a member of the prosecution team.

---

[1]     The United States also argues that its "discovery obligations do not reach to material in the possession or control of private third parties such as Chatstep and Microsoft (the two ESPs to report images to NCMEC here)."  Doc. 65, at pp. 8-9.  As Defendant Rosenschein only requests information and materials in the possession of NCMEC, this argument has no bearing on the resolution of the instant motion.

Accordingly, the United States must disclose the requested material information in NCMEC's possession as it is material to Dr. Rosenschein's constitutional defenses.

      **B.**      **As NCMEC is a federal government entity, and the requested materials are material to his constitutional defense, and may reasonably lead to additional exculpatory evidence, the United States has a duty to locate and disclose these materials.**

The United States cannot rationally argue that it has no "knowledge of, nor has the government obtained, the information requested by Defendant," (Doc. 65, at p. 8), where it is clear from the United States' own history of the investigation that such communications and submissions had to have occurred in order for the United States to have obtained the alleged illicit images. Even assuming a lack of knowledge, or a lack of possession of the requested information, a "prosecutor's office cannot get around *Brady* by keeping itself in ignorance, or by compartmentalizing information about different aspects of a case." *United States v. Padilla*, 2011 WL 1103876, at *7 (D.N.M. March 14, 2011)(Browning, J.) (internal quotation marks, citations and alterations omitted). *See also United States v. Deleon et al.*, CR-15-4268-JB, Doc. 907, at * 104 (D.N.M. Feb. 8, 2017)(Browning, J.) ("Given the United States' concession [that the New Mexico Corrections Department took part in a joint investigation], the United States thus has a duty to search the files that the governmental agencies closely aligned with this prosecution maintain, where there is a reasonable prospect of finding exculpatory evidence"). *United States v. Burton*, 81 F. Supp. 3d 1229, 1249 (D.N.M. 2015) (internal quotation marks and citations omitted) (providing that when the information in question may reasonably lead to exculpatory evidence, a "prosecutor may have a duty to search files maintained by other governmental agencies closely aligned with the prosecution."). Even the Court order cited by the United States on page 8 of the Response, *see* Dkt. 65, p.8, *United States v. Wolfenbarger*, 5:16-CR-00519-LHK, p. 5 (N.D. Ca. Jan. 12, 2018) noted that while the evidence in that case did not

technically fall under Fed. R. Crim. P. 16, the due process clause of the constitution may require its production.  And unlike the materials requested in *Wolfenbarger*, the requested materials here are narrowly tailored to support the constitutional challenges forwarded in Dr. Rosenschein's motions to suppress evidence under *Ackerman* as well as the chain of custody defenses that Dr. Rosenschein will raise in the criminal case.  Tellingly, the *Wolfenbarger* court did not deny the motion to compel with prejudice, but rather granted leave to the defense to more carefully tailor his request to the materiality of the constitutional issues presented.  That is not an issue here, and the Government has not argued otherwise.

The material nature of the discovery request and its relevance to the constitutional defense and chain of custody defenses, as discussed within the motion to compel, provide a sufficient justification for the Court to order their production.  (Doc. 57, at ¶¶ 8-9).  Without the requested evidence, Dr. Rosenschein will be unable to prosecute his defenses  It would undermine the concepts of constitutional liberty if the United States could bury evidence of unconstitutional behavior or the failure to establish a chain of custody under the guise that a governmental entity is not part of the prosecution team–especially when the governmental entity is wedded to the investigation as NCMEC is.

Given the materiality of the requested information, and the central role it plays in Dr. Rosenschein's defenses, there is certainly a reasonable prospect of finding exculpatory evidence in connection with the information requested.  *See Burton*, 81 F. Supp. 3d at 1249.  The United States has a duty to disclose the requested information, even if it is not currently in its possession of the local United States Attorney's Office, but instead is in the possession, custody and control of NCMEC, a separate federal law enforcement entity that is a member of the prosecution team.

II.    THE REQUESTED INFORMATION IS CLEARLY
       MATERIAL TO DEFENDANT ROSENSCHEIN'S DEFENSE

The requested NCMEC information, which is the impetus for the entire criminal

prosecution here, is clearly material to Dr. Rosenschein's defense.  "The materiality standard is

not a heavy burden" and can be met when the information in question "enables the defendant

significantly to alter the quantum of proof in his favor." *United States v. Burton*, 81 F. Supp. 3d

1229, 1244 (D.N.M. 2015) (internal citations and quotation marks omitted).

As the same information requested is likely necessary for the United States' case against

him, i.e., chain of custody, it is hard to see how the United States can argue that this information

does not "play an important role in uncovering admissible evidence." *Id*.  The Supreme Court

has held that Rule 16 requires the disclosure of materials that refute the United States' case in

chief.  *United States v. Armstrong*, 517 U.S. 456, 462 (1996).   For the United States to obtain

convictions on the charges in question—18 U.S.C. § 2252A(a)(2), Distribution of Visual

Depictions of Minors Engaged in Sexually Explicit Conduct; and 18 U.S.C. § 2252A(a)(5)(B),

Possession of Visual Depictions of Minors Engaged in Sexually Explicit Conduct—it must

establish that Dr. Rosenschein was knowingly in possession of, and knowingly attempted to

distribute, child pornography.  Under the facts now known to Dr. Rosenschein, it is impossible

for the United States to show that he ever possessed the child pornography image associated with

the initial CyberTipline report for July 31, 2016.

Under the circumstances, the United States cannot realistically argue that this information

is not material to Dr. Rosenschein's defense.  What the United States is attempting to say is that

Dr. Rosenschein may not know how NCMEC developed the CyberTipline report that led to him

being arrested and charged with these crimes.  Dr. Rosenschein simply cannot receive a fair trial

without this information.  Not only is this evidence central to the case against Dr. Rosenschein,

but, as discussed within the underlying motion, he should be entitled to review this information to support his suppression challenges under the Fourth Amendment.  *See* Doc. 57, at ¶ 10.  Dr. Rosenshein also maintains that the need to review such materials is essential in order to be fully informed concerning the evidence during any possible plea discussions.  *See id. See also Missouri v. Fry*, 132 S.Ct. 1399 (2012).

WHEREFORE, for all of the reasons discussed above, Defendant Guy Rosenschein respectfully requests that the Court compel the materials in question under U.S. Const. amend. V; U.S. Const. amend. VI; U.S. Const. amend. XIV; Fed. R. Crim P. 16; and *Brady v. Maryland*, 373 U.S. 83 (1963), seeing how NCMEC is a meaningful member of the investigative team.

Respectfully Submitted,

ROTHSTEIN DONATELLI LLP


*Marc M. Lowry 4/23/2018*
MARC M. LOWRY
PAUL LINNENBURGER
500 Fourth Street NW, Suite 400
Albuquerque, NM 87102
(505) 243-1443
mlowry@rothsteinlaw.com
plinnenburger@rothsteinlaw.com

*Attorneys for Defendant Guy Rosenschein*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 23rd day of April, 2018, I filed the foregoing pleading electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

Sarah Mease
Holland S. Kastrin
United States Attorney's Office
P.O. Box 607
Albuquerque, NM 87103
sarah.mease@usdoj.gov
hkastrin@usa.doj.gov

*/s/ Marc M. Lowry 4/23/18*
ROTHSTEIN DONATELLI LLP