UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    *Plaintiff*,

v.                                                                                                Case No. 1:16-CR-4571 JCH

GUY ROSENSCHEIN,

    *Defendant*.

**DEFENDANT DR. ROSENSCHEIN'S SUPPLEMENTAL BRIEF IN SUPPORT OF HIS MOTION TO COMPEL PRODUCTION OF NCMEC MATERIALS (DKT. 57)**

COMES NOW Defendant Dr. Guy Rosenschein, through his counsel of record Rothstein Donatelli LLP (Marc M. Lowry and Paul M. Linnenburger), and files this supplemental brief as authorized by the Court.  *See* Dkt. 98, p. 9.  For the reasons discussed below, the requested materials are discoverable under Rule 16.  The Court should order the disclosure of the requested materials under U.S. Const. amend. V; U.S. Const. amend. VI; Fed. R. Crim P. 16; and *Brady v. Maryland*, 373 U.S. 83 (1963).

    **I.**    **THE NATIONAL CENTER FOR MISSING AND EXPLOITED CHILDREN ("NCMEC") IS A FEDERAL LAW ENFORCEMENT AGENCY THAT DIRECTLY PARTICIPATED IN THE CRIMINAL INVESTIGATION OF THIS CASE.**

In prior briefing, the United States cited to case law acknowledging that the "U.S. Attorney's Office is not required to disclose information it is unaware of and that is in the possession of a separate federal agency *not involved in the prosecution or investigation of the present case*." Dkt. 65, p. 5 (citing *United States v. Webb*, 651 Fed. Appx. 740, 744 (10th Cir. 2016) (emphasis added).  While the United States downplayed NCMEC' role in the investigation

in the previous briefing, Dkt. 65, p. 8, the Government later conceded, as undisputed, that "NCMEC conducts a limited investigation, including identifying the location of the internet user through the IP address provided in the CyberTipline report. . . . After determining, through open-source information that Defendant resided in Albuquerque, NCMEC forwarded the material to the New Mexico Attorney General's Office Internet Crimes Against Children (ICAC) Task Force, and BCSO initiated a criminal investigation." Dkt. 82, p. 7, ¶ 13 (The United States' Response In Opposition To Defendant's Motions To Suppress Evidence (Docs. 71, 74, 77)). This passage form the United States brief is a concession that NCMEC was directly and intimately involved in the criminal investigation of Dr. Rosenschein. It follows then that Rule 16 discovery attaches to NCMEC materials under the holding of *Webb*, a case relied upon by the United States.

    This result should not be surprising to this Court. In *Ackerman*, then Judge, now Justice, Gorsuch, writing for a unanimous panel of the Tenth Circuit, noted that Congress has bestowed unique law enforcement powers upon NCMEC. *See United States v Ackerman*, 831 F.3d 1292, 1296 (10th Cir. 2016). According to the Tenth Circuit:

> First, NCMEC and NCMEC alone is statutorily obliged to maintain an electronic tipline for ISPs to use to report possible Internet child sexual exploitation violations to the government. Under the statutory scheme, NCMEC is obliged to forward every single report it receives to federal law enforcement agencies and it may make its reports available to state and local law enforcement as well. *See id.* § 2258A(c).
>
> Second, ISPs must report any known child pornography violations to NCMEC. Not to any other governmental agency, but again to NCMEC and NCMEC alone.

*Id*. Given NCMEC's unique law enforcement powers–ones that "extend well beyond those enjoyed by private citizens"–the Tenth Circuit did not hesitate to hold that NCMEC was a federal "governmental entity." *Id.*

In its response to Dr. Rosenshein's suppression motions, the United States claims that "the question of whether NCMEC is a government actor is irrelevant because it is undisputed that NCMEC did not view the files in question." Dkt. 82, p. 23. The above quote from the *Ackerman* case demonstrates that such an asssertion is wrong. NCMEC falls under Rule 16's scope of discovery precisely due to "the special law enforcement duties and powers it enjoys." *Id*. Those duties make NCMEC part of the investigatory team in every criminal case that involves a CyberTipline report. As the management off the CyberTipline is a law enforcement duty uniquely assigned to NCMEC under federal law, the United States hardly can claim that NCMEC's participation was immaterial to the criminal investigation here. Without NCMEC's involvement, this case would not have been filed. NCMEC's role in (1) sharing its labor and resources, (2) providing evidence that the prosecutors were well aware of (the United States disclosed the NCMEC reports early on in discovery), and (3) via its Congressional mandate, *see* 18 U.S.C. § 2258A(c), forwarding every CyberTipline report (including those involved in this case) to federal and state law enforcement agencies, support the legal conclusion that NCMEC was acting as an part of the investigative team in this case.

Accordingly, the Court is well within its authority to compel the discovery of documents in the possession of NCMEC because NCMEC is a federal governmental entity involved in this investigation and the requested materials are "material to preparing the defense" of Dr. Rosenschien's case. *See* Fed. R. Crim. P. 16(a)(1)(E)(i). The fact that the United States has tendered two declarations from NCMEC in support of its position in the suppression litigation shows that these materials are within the "possession, custody, or control" of the United States.[1]

---

[1] This Court can take judicial notice of the facts that make up the *Ackerman* opinion. For instance,

**II.     THE DOCUMENTS SOUGHT FROM NCMEC ARE MATERIAL TO THE PRESENTATION OF DR. ROSENSCHEIN'S SUPPRESSION MOTIONS.**

Circuit courts have held that "Rule 16(a)(1)(E) permits discovery related to the constitutionality of a search or seizure." *United States v. Soto-Zuniga*, 837 F.3d 992, 1001 (9th Cir. 2016). In fact, the *Soto-Zuniga* Court reversed a criminal conviction due to the failure of the district court to provide discovery related to the defendant's suppression motion. The Tenth Circuit has also held that Rule 16(a)(1)(E)(i) allows for the discovery of documents relevant to

---

> Representatives of multiple law enforcement agencies have offices in the NCMEC building, including the FBI, Department of Homeland Security, U.S. Marshals, U.S. Postal Inspection Service, and Department of Defense. R. vol. 3 at 246-47; *United States v. Keith*, 980 F.Supp.2d 33, 41 (D. Mass. 2013) ("[The] U.S. Marshals and other law enforcement personnel provide on-site support and referral assistance for NCMEC's Exploited Child Division."). The FBI's on-site presence includes both a "supervisory special agent" assigned "full-time" to NCMEC to "coordinate the use of both FBI and NCMEC resources and facilitate the most effective response to ... child pornography, and other cases" and an "embedded intelligence analyst" who "addresses cyber tips" and "supports" the Child Victim Identification Program. U.S. Dep't of Justice, Office of Juvenile Justice & Delinquency Prevention, Federal Resources on Missing and Exploited Children 21-24 (6th ed. 2011). The Secret Service, too, provides forensic services to NCMEC in the form of "polygraph examinations, handwriting and fingerprint analysis, voiceprint comparisons, audio and video enhancements, computer and other electronic media examinations, forensic photography, graphic arts, research and identification, and the Operation Safe Kid Program." *Id.* at 17; *see also* 18 U.S.C. § 3056(f).
>
> Almost a quarter of NCMEC's board members represent government agencies or law enforcement, including the FBI, U.S. Secret Service, U.S. Marshals, Bureau of Alcohol, Tobacco, Firearms and Explosives, Immigration and Customs Enforcement, Naval Criminal Investigative Service, U.S. Postal Inspection Service, U.S. Nuclear Regulatory Commission, National Sheriffs' Association, Fraternal Order of Police, and National Association of Attorneys General. *See Board of Directors*, NCMEC, http://www.missingkids.com/boardofdirectors (last visited July 7, 2016).

831 F.3d at 1298 n.4 & n.5.

the defense prosecution of suppression motions, as long as the defense makes a "prima facie showing of materiality." *United States v. Simpson*, 845 F.3d 1039, 1056 (10th Cir. 2016).

In this case Dr. Rosenschein has attacked as unconstitutional how the evidence against him was collected under *Ackerman*, as well as the manner in which the search warrant affidavit was drafted under *Franks v. Deleware*, 438 U.S. 154 (1978). As for the *Ackerman* challenge, all of the requested documents listed in the original motion to compel is material to the suppression challenge forwarded by Dr. Rosenschein. *See* Dkt. 57, pp. 2-4, ¶¶ 6. The United States understands that the *Ackerman* motion requires Dr. Rosenschein to show that NCMEC (1) "knew of and acquiesced on the intrusive conduct," and (2) whether Microsoft "intended to assist law enforcement efforts." Dkt. 65, p. 9.

The requested documents in Dr. Rosenschein's motion to compel are material to both elements of that analysis. These documents are known to exist. They are material to showing the nature of the relationship between Microsoft, NCMEC, and Chatstep. The relationship between these three entities will underscore how NCMEC repeatedly sent correspondence to Chatstep requesting, under penalty of federal sanctions, to sign up for NCMEC's CyberTipline service. They will show whether NCMEC alerted Chatstep to Microsoft's PhotoDNA program through NCMEC's PhotoDNA initiative, a program designed to direct Internet Service Providers to use Microsoft's PhotoDNA program to look for child pornography on their web sites. They will show the longstanding entanglement between NCMEC and Microsoft, and how those two entities collaborated for years during the development of PhotoDNA and as well as during PhotDNA' implementation as the premier law enforcement tool in the fight against child pornography. By enlightening this Court as to the nature and extent of the ongoing relationship between Microsoft and NCMEC, the documents will place Dr. Rosenschein in a position to

prove that NCMEC knew about every intimate detail of Microsoft's PhotoDNA program. These documents will show that NCMEC not just acquiesced but affirmatively supported Microsoft's intrusive efforts to conduct warrantless seizures and searches of millions of photographs that belonged to Internet users on a daily basis. NCMEC did so knowing and understanding that Microsoft had no reasonable suspicion, no probable cause, or even a desire to comply with the Fourth Amendment. The evidence will show that this conduct intentionally was designed to side step our constitutional structure and that Microsoft intended to support law enforcement prosecutions.

As for the *Franks* challenge, these documents are also material for Dr. Rosenschein to show that the affidavit filed by the BCSO detective in this case was recklessly misleading. As discussed in the *Franks* motion, Dr. Rosenschein contends that the detective's recklessly false claims about Chatstep reporting the images (when the requested evidence will show that Microsoft did) "were a foil to cover up his unconstitutional search of the images," Dkt. 71, p. 13, as well as the reality that Microsoft's PhotoDNA program was responsible for the discovery and reporting of the images at issue, not Chatstep. The fact that the detective falsely claimed that Dr. Rosenschein had sent the images to another user, when PhotoDNA made that impossible, shows that the detective affirmatively misled the judge that issued the warrant. As the requested information will serve to prove just who made the initial reports to NCMEC and how, the requested documents will underscore Chatstep's very limited involvement here, contrary to the detective's sworn affidavit.

### III. DR. ROSENSCHEIN REQUESTS AN OPPORTUNITY TO BE HEARD ON THIS MOTION TO ANSWER ANY QUESTIONS THE COURT MAY HAVE ABOUT THE MATERIALITY OF THE DOCUMENTS REQUESTED IN THE MOTION TO COMPEL

As the Court knows, the briefing on this case has been extensive, and the legal issues here are novel and factually complex. The suppression motions raise, for the first time, the relationship between Microsoft and NCMEC over the development and implementation of a seizure and search program, PhotoDNA, that was designed, intentionally, to circumvent the Fourth Amendment. Dr. Rosenschein requests a hearing of approximately one hour in length to ensure the Court that the documents sought here are material to the suppression issues he has raised.

WHEREFORE, for the reasons discussed above, Defendant Dr. Guy Rosenschein respectfully requests that the Court compel the requested materials to be produced.

Respectfully Submitted,

ROTHSTEIN DONATELLI LLP

*Marc M. Lowry*
MARC M. LOWRY
PAUL LINNENBURGER
500 Fourth Street NW, Suite 400
Albuquerque, NM 87102
(505) 243-1443
mlowry@rothsteinlaw.com
plinnenburger@rothsteinlaw.com

*Attorneys for Defendant Dr. Guy Rosenschein*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 27th day of July, 2018, I filed the foregoing pleading electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

Sarah Mease
Holland S. Kastrin
United States Attorney's Office
P.O. Box 607
Albuquerque, NM 87103
sarah.mease@usdoj.gov
hkastrin@usa.doj.gov

                                            */s/ Marc M. Lowry*
                                            ROTHSTEIN DONATELLI LLP