IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                                                                                              CR 16-4571 JCH

GUY ROSENSCHEIN,

    Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter comes before the Court on Non-Parties Microsoft Corporation, Courtney Gregoire, and Greg Clark's Motion to Quash Rule 17(a) Subpoenas, [Doc. 169], filed July 29, 2019, and fully briefed on September 6, 2019. Presiding District Judge Herrera referred the Motion to the undersigned Magistrate Judge for decision pursuant to 28 U.S.C. § 636(b)(1)(A) and Fed. R. Crim. P. 59(a). [*See* Doc. 186]. At issue in Microsoft's Motion is whether the Court should quash or modify the subpoenas ad testificandum issued by Defendant Rosenschein to Ms. Gregoire and Mr. Clark under Rule 17(a) of the Federal Rules of Criminal Procedure. Having considered the parties' arguments and all pertinent authority, the Court recommends that the non-parties' Motion be granted as to Ms. Gregoire but denied in part as to Mr. Clark.

### I.    BACKGROUND

Defendant Rosenschein is charged with the distribution and possession of child pornography. [*See* Doc. 1]. As stated by Judge Herrera, law enforcement began investigating Rosenschein when the Bernalillo County Sheriff's Office ("BCSO") received two CyberTipline Reports from the NCMEC. [Doc. 151, p. 2]. The two CyberTipline Reports that the BCSO received were generated by Chatstep, an electronic service provider that hosts internet-based conversations

between users. [*Id.*]. Chatstep was able to identify the alleged child pornography through its use of Microsoft's PhotoDNA service. [*Id.*]. PhotoDNA is a cloud-based service developed by Microsoft to help prevent the sharing of child pornography. [*Id.*]. It works by analyzing digital images to create a unique "hash value" of a file that is then matched against databases of hash values of known child pornography. [*Id.*, pp. 2-3]. Through its use of PhotoDNA, Chatstep identified two images allegedly distributed by Rosenschein as child pornography before the images were submitted to the NCMEC. NCMEC did not view the images, but determined the probable physical origin of the images, and forwarded the material to the New Mexico Attorney General's Office Internet Crimes Against Children Task Force. This prosecution followed.

Through motions to suppress, Defendant Rosenschein has "challenged the constitutionality of the search and seizure of digital images by Microsoft's PhotoDNA program." [Doc. 174, p. 2 (citing Doc. 74)]. "In short, Dr. Rosenschein has argued that Microsoft's longstanding relationship with NCMEC, coupled with NCMEC's acquiesce (sic) in Microsoft's conduct, and Microsoft (sic) intention to assist NCMEC and other law enforcement agencies with the PhotoDNA program, ran afoul of Dr. Rosenschein's Fourth Amendment Rights to be free of intrusive governmental oversight." [*Id.* (citing Doc. 71, pp. 13-19)]. Specifically, Defendant Rosenschein argues that "Microsoft's PhotoDNA program indiscriminately seized, searched and hashed every image passing through Chatstep's service without any concerns about having reasonable suspicion or probable cause to believe a crime had been committed before doing so." [*Id.*].

In support of his motions to suppress, Defendant Rosenschein subpoenaed two Microsoft employees to testify at Judge Herrera's hearing on the Motions: Ms. Gregoire and Mr. Clark. [*See* Doc. 169-1, p. 5; Doc. 169-2, p. 5]. Ms. Gregoire and Mr. Clark now move to quash the subpoenas, claiming that any relevant testimony they could offer would be cumulative of the testimony of

Microsoft employee Jeff Lilleskare, whose declarations were offered by the United States in support of its Response and Surreply briefs in opposition to Defendant Rosenschein's Motion to Suppress Evidence Under [*United States v.*] Ackerman[, 831 F.3d 1292 (10th Cir. 2016)]. [Doc. 74; *see* Docs. 82-6 (Lilleskare Declaration), 94-1 (Supplemental Declaration)]. Ms. Gregoire and Mr. Clark also represent that testifying at Defendant Rosenschein's suppression hearing would be unduly burdensome because Ms. Gregoire, as Chief Digital Safety Officer and Assistant General Counsel at Microsoft "travel[s] extensively internationally as well as domestically[,]" and because Mr. Clark, a Principal Program Manager at Microsoft, is "responsible for a number of time sensitive and urgent projects [and p]reparing for and testifying at the hearing in this case would interfere with [his] ability to fulfill those responsibilities in a timely manner." [Doc. 169-1, p. 1; Doc. 169-2, p. 3].

Defendant Rosenschein's Response brief argues that Microsoft's Motion "fails to address the actual testimony Dr. Rosenschein seeks from Courtney Gregoire and Greg Clark." [Doc. 174, p. 3]. Defendant Rosenschein explains that Ms. Gregoire "has acknowledged the role NCMEC had in the development of the PhotoDNA software[,]" whereas Mr. Lilleskare has "tacit[ly] assert[ed] that NCMEC was not involved[.]" [*Id.*, pp. 3-5]. Defendant Rosenschein then speculates that Ms. Gregoire was present at a meeting wherein "three entities—Darthmouth (sic) College, NCMEC and Microsoft—came to develop PhotoDNA." [*Id.*, p. 5]. Thus, Defendant Rosenschein seeks to have Ms. Gregoire testify about Microsoft and NCMEC's collaboration in the development of PhotoDNA. [*Id.*, p. 6]. Additionally, Defendant Rosenschein seeks to question Ms. Gregoire "about the ongoing legal relationship between Microsoft and PhotoDNA concerning the sharing of hash values, the licensing of PhotoDNA as part of NCMEC's PhotoDNA initiative … as well has (sic) Microsoft's role in other areas such as ICAC meetings and law enforcement support."

3

[*Id.*, pp. 6-7]. As to Mr. Clark, Defendant Rosenschein argues that "[q]uite unlike Jeff Lilleskare, Mr. Clark was instrumental in welcoming Chatstep to Microsoft's PhotoDNA Cloud Service Program and troubleshooting Chatstep's set up of the PhotoDNA program." [Doc. 174, p. 8]. Defendant Rosenschein then details an introductory email sent by Mr. Clark which offered "guidance … in the form of the Sound Practices Guide…. [which] provides legal considerations to companies like Chatstep that could 'be considered to be an agent of law enforcement' by a Court." [*Id.* (citing Doc. 174-4, p. 7)]. Additionally, Defendant Rosenschein provides emails between Chatstep, Mr. Clark and NCMEC indicating that, when Chatstep's reporting credentials were not initially approved, "NCMEC responded to Microsoft's request for the reporting credentials right away without any input from Chatstep." [Doc. 174, p. 8]. Finally, Defendant Rosenschein presents an email from Mr. Clark to Chatstep explaining "that Microsoft had a preference that the person attempting to upload a blocked image file not be notified that the image was blocked or why." [*Id.*, pp. 8-9].

In their Reply, Ms. Gregoire and Mr. Clark point out that there is no evidence that Ms. Gregoire was present at the meetings Defendant Rosenschein referenced in his Response, and in fact, provide evidence that she was not. [Doc. 177, pp. 5-6]. They also argue that Mr. Lilleskare has "more specific and detailed knowledge than Ms. Gregoire regarding the operation and implementation of PhotoDNA." [*Id.*, p. 6]. As to Ms. Gregoire's knowledge regarding Microsoft and NCMEC's contractual relationship, they argue that much of her knowledge would be privileged, and that Mr. Lilleskare "is familiar with the contractual relationship between Microsoft and NCMEC and can knowledgably testify about this issue." [*Id.*, pp. 7-9]. As to Mr. Clark, they argue that a Chatstep representative, Saurabh Davala (who will testify at the hearing), can provide similar information about the relationship between Chatstep and Microsoft. [*Id.*, p. 10]. The non-

parties represent that Mr. Lilleskare is equally competent to testify about Microsoft's preference to not notify individuals who attempt to upload child pornography, rendering Mr. Clark's testimony on that issue cumulative. [*Id.*, p. 11]. Finally, they argue that Defendant Rosenschein has not rebutted their assertions that testifying at the hearing would be unduly burdensome. [*Id.*, p. 12].

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 17(a) governs subpoenas ad testificandum in criminal proceedings. However, the Rule is silent as to whether such subpoenas may be quashed or modified. On the other hand, the proponent of a subpoena under Federal Rule of Criminal Procedure 17(c) bears the burden of proving that it is not "unreasonable or oppressive." *See U.S. v. Nixon*, 418 U.S. 683, 698-699 (1974). As the First Circuit has stated, "[r]oughly the same standard applies to subpoenas compelling the attendance of witnesses, *i.e.*, subpoenas ad testificandum." *Stern v. U.S. Dist. Court for the Dist. Of Mass.*, 214 F.3d 4, 17 (1st Cir. 2000) ("Although Rule 17(a), which governs such subpoenas, does not provide explicitly for quashal or modification, courts routinely have entertained motions seeking such relief and decided them by reference to comparable principles."). "Specifically, a subpoena ad testificandum survives scrutiny if the party serving it can show that the testimony sought is both relevant and material." *Id.* (citations omitted); *see also United States v. North*, 713 F. Supp. 1448, 1449 (D.D.C. 1989) ("[T]he Court is required to determine whether or not defendant has established that Mr. Reagan's appearance is necessary to assure defendant a fair trial."). On the other hand, there is no violation of Rule 17(a) where a subpoena is quashed for seeking testimony which is cumulative or immaterial to the defense. *U.S. v. Beasley*, 479 F.2d 1124, 1128 (5th Cir. 1973).

While the Court acknowledges that the Federal Rules of Evidence do not apply at suppression hearings, *see United States v. Miramonted*, 365 F.3d 902, 904 (10th Cir. 2004), it finds certain definitions and descriptions contained therein useful. For example, the Federal Rules define relevant evidence as that which "has any tendency to make a fact more or less probable than it would be without the evidence [where] the fact is of consequence in determining the action." Fed. R. Evid. 401. Irrelevant evidence is not admissible, Fed. R. Evid. 402, and relevant evidence may be excluded by the Court if its probative value is "substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Moreover, every person is competent to be a witness; however, "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 601, 602.

It should be noted that Rule 17(c) subpoenas duces tecum are "more far-reaching than testimonial subpoenas," and neither were "intended to provide an additional means of discovery." *U.S. v. Boutte*, 17cr3338-JMC, 2019 WL 2929049, *2 (D.N.M. 2019) (Carson, Cir. J., Sitting by Designation). As such, a Rule 17(a) subpoena may only be issued for the purpose of compelling the attendance of witnesses at formal proceedings, such as grand jury proceedings, preliminary hearings, and trials. *U.S. v. LaFuente*, 991 F.2d 1406, 1411 (8th Cir. 1993). Finally, it bears emphasis that the Federal Rules of Criminal Procedure are generally "to be interpreted to provide for the just determination of every criminal proceeding, to secure simplicity in procedure and fairness in administration, and to eliminate unjustifiable expense and delay." Fed. R. Crim P. 2.

**III. ANALYSIS**

Cognizant that its role in interpreting the Federal Rules of Criminal Procedure is to ensure the just determination of every criminal proceeding and to eliminate unjustifiable expense and delay, the Court has examined the declarations of Mr. Lilleskare and compared them to the proposed testimony of Ms. Gregoire and Mr. Clark as proffered by Defendant Rosenschein. Having done so, the Court concludes that Ms. Gregoire's testimony would indeed be cumulative and, therefore, the subpoena to her should be quashed. However, the Court concludes that Defendant Rosenschein has plausibly argued that Mr. Clark has relevant and material knowledge that exceeds Mr. Lilleskare's, and that Mr. Clark has failed to establish that compliance with the subpoena would be unduly burdensome.

**A. Defendant Rosenschein has demonstrated that the testimony sought by the Subpoenas is both relevant and material to the issues at bar in his suppression motion.**

As set forth above, the proponent of a subpoena ad testificandum must demonstrate that the testimony sought is relevant and material to the issues to be decided; in other words, here, Defendant Rosenschein must demonstrate that the testimony of Ms. Gregoire and Mr. Clark at the suppression hearing before Judge Herrera is necessary to assure him a fair trial. At issue in Defendant Rosenschein's suppression motion is whether Microsoft acted as an agent of NCMEC, and by extension the government, by its actions in providing the PhotoDNA software for use by developers, like Chatstep, or by its actions in assisting Chatstep to complete the NCMEC credentialing process. [*See generally* Doc. 74]. Thus, the question is: has Defendant Rosenschein demonstrated that both Ms. Gregoire and Mr. Clark will provide testimony that is relevant to Microsoft's relationships with NCMEC and Chatstep, how PhotoDNA was developed, and Microsoft's alleged intent to assist NCMEC as well as other law enforcement agencies?

The answer to this question is yes. Defendant Rosenschein has demonstrated that "Ms. Gregoire has acknowledged the role NCMEC had in the development of the PhotoDNA software," [Doc. 174, p. 3], and that she has personal knowledge of the matters to be addressed at the suppression hearing by virtue of her role as the Chief Digital Safety Officer at Microsoft. [*See* Doc. 169-1]. Defendant Rosenschein has also demonstrated that Mr. Clark has personal knowledge related to Microsoft's relationship with Chatstep, as he was the Program Manager for the PhotoDNA Cloud Service at Microsoft when Chatstep applied for NCMEC credentialing and was "responsible for customer onboarding and defining product enhancements" at that time. [*See* Doc. 169-2]. Therefore, Defendant Rosenschein has demonstrated that the testimony of Ms. Gregoire and Mr. Clark is relevant to the issues to be decided at the hearing on his motion to suppress.

**B. Having reviewed the declarations of Mr. Lilleskare and the evidence proffered by Defendant Rosenschein, the Court concludes the subpoenas seek cumulative testimony from Ms. Gregoire but not from Mr. Clark.**

Cumulative testimony, though relevant, may be excluded from a suppression hearing and may form the basis of an order quashing a subpoena ad testificandum. Mr. Lilleskare's declarations demonstrate that he is competent to testify as to: Microsoft's business rationale for the development of PhotoDNA and the PhotoDNA Cloud Service; the operation and implementation of PhotoDNA at Microsoft; how developers such as Chatstep use the PhotoDNA Cloud Service; the operation of the PhotoDNA Cloud Service; the hash sets used by the PhotoDNA Cloud Service; Microsoft's role in routing a Cybertip via the Reporting API to NCMEC and the developer's role in transmitting the Cybertip; and, the relationship between Microsoft and NCMEC. [*See* Docs. 82-6, 94-1 (Lilleskare Declarations)]. Thus, the question is whether the subpoenas seek cumulative testimony where Microsoft has offered Mr. Lilleskare as a witness who has knowledge related to Microsoft's PhotoDNA technology and its PhotoDNA Cloud Service and Microsoft has also

provided declarations of Ms. Gregoire and Mr. Clark stating that they do not possess any information relevant to this case that Mr. Lilleskare does not possess.

Ms. Gregoire has asserted that she does not possess any non-privileged information relevant to this case that Mr. Lilleskare does not possess. [Doc. 169-1]. Defendant Rosenschein's argument to the contrary rests on the erroneous assumption that she was present at a meeting between Microsoft, NCMEC, and Hany Farid, at the inception of the PhotoDNA initiative. [*See* Doc. 174, p. 5]. However, Ms. Gregoire was not present at this meeting. [Doc. 177-2]. Moreover, in a supplemental declaration, Mr. Lilleskare asserts that he can knowledgably testify about the contractual relationship between Microsoft and NCMEC, further rending Ms. Gregoire's testimony superfluous. [Doc. 177-1]. Therefore, the Subpoena to Ms. Gregoire should be quashed.

On the other hand, while Mr. Clark's declaration asserts that he has no information Mr. Lilleskare does not possess, [Doc. 169-2], Defendant Rosenschein has demonstrated that Mr. Clark communicated directly with Chatstep when it was initially applying to use the PhotoDNA Cloud Service. [*See* Doc. 174-5]. These communications indicate a familiarity with the PhotoDNA system and its processes as related to Chatstep that Mr. Lilleskare was simply not in a position to possess. Moreover, Mr. Clark has direct and firsthand knowledge of Microsoft's proffer of its services to developers seeking to employ PhotoDNA and work with NCMEC. This evidence is important to Defendant Rosenschein's defense theory that Microsoft may have provided advice to developers in an attempt to prevent them from being considered agents of the government. Additionally, Mr. Clark can testify about his statement "that Microsoft had a preference that the person attempting to upload a blocked image file not be notified that the image was blocked or why," which may be relevant to Microsoft's intent. The subpoena to Mr. Clark should be enforced because he possesses relevant knowledge beyond the purview of Mr. Lilleskare.

**C. Because the subpoena to Mr. Gregoire should be quashed, the Court need not reach the issue of whether it seeks testimony protected by the attorney-client relationship or whether it is unreasonable or oppressive as to her.**

As noted, Microsoft also argues that the subpoena to Ms. Gregoire should be quashed because it seeks testimony protected by the attorney-client relationship related to Ms. Gregoire's "internal discussions regarding Microsoft's PhotoDNA technology and its PhotoDNA Cloud Service." There is little authority addressing the proffer of privilege by a witness in response to a Rule 17(a) subpoena. This may be because the plain language of Rule 17(a) contains no provision for quashing a subpoena ad testificandum. Some courts and commentators have concluded that the absence of such language precludes a motion to quash and instead requires the witness to appear and claim the privilege or immunity in open court. *See, e.g.*, *United States v. Adams*, 2011 WL 13115427, at *2 (N.D.W. Va. Nov. 10, 2011) (citing 2 Charles Alan Wright and Peter J. Henning, Federal Practice and Procedure § 274 (4th ed. 2009)). However, the Court has already determined that the subpoena to Ms. Gregoire should be quashed on cumulativeness grounds, so it need not resolve whether to quash the subpoena for interference with the attorney client privilege.

**D. Mr. Clark's statement that he is committed to time-sensitive projects for Microsoft does not render the subpoena unreasonable or oppressive; however, the Court will not recommend that he be required to bring to the hearing his access credentials to the PhotoDNA algorithm or any associated API.**

The Federal Rules, including Rule 17(a), are to be interpreted by the Court to provide for the just determination of every criminal proceeding and to eliminate unjustifiable expense and delay. Fed. R. Crim. P. 2. As noted, Mr. Clark's declaration states that he is "responsible for a number of time sensitive and urgent projects…. [and that] Preparing for and testifying at the hearing in this case would interfere with [his] ability to fulfill those responsibilities in a timely manner." [Doc. 169-2]. Without more, the Court does not believe this inconvenience on Mr. Clark and Microsoft's part is sufficient to warrant quashing the subpoena. The same experience and

subject matter knowledge which make Mr. Clark uniquely valuable in the workplace render him indispensable as a witness for this suppression hearing.

The Court does, however, note that Mr. Clark states that complying with the subpoena's request that he bring to the hearing his access credentials to the PhotoDNA algorithm is impossible, as he does not have the ability to access the PhotoDNA algorithm. Accordingly, the Court recommends that Judge Herrera deny Mr. Clark's Motion to Quash the subpoena ad testificandum issued to him in its entirety but grant his Motion in part and modify the Subpoena so that Mr. Clark no longer is required to bring his access credentials.

## IV. RECOMMENDATION

As the proponent of the Subpoenas, it is Defendant Rosenschein's burden to demonstrate that Ms. Gregoire and Mr. Clark's testimony would be both relevant and material to the issue of whether Microsoft, by its actions, is a governmental entity or agent. Microsoft has convinced this Court that Ms. Gregoire's testimony as to these issues would be cumulative in light of Mr. Lilleskare's declarations. However, the same is not true as to Mr. Clark.

Wherefore, IT IS HEREBY RECOMMENDED that Non-Parties Microsoft Corporation, Courtney Gregoire and Greg Clark's Motion to Quash Rule 17(a) Subpoenas [Doc. 169], be **granted in part and denied in part**, for the reasons set forth above.

_____
Jerry H. Ritter
U.S. Magistrate Judge

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).
>
> **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**