IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

v.                                                                                                                                             CR 16-4571 JCH

GUY ROSENSCHEIN,

       Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the *Proposed Findings and Recommended Disposition* ("PFRD") of the Magistrate Judge [Doc. 183], filed October 2, 2019, which recommends that the Court grant Non-Party Microsoft Corporation's Motion to Modify Rule 17(c) Subpoena [Doc. 125]. The Court referred the Motion to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and Fed. R. Crim. P. 59(a). [*See* Doc. 139]. Defendant Rosenschein objected to the Magistrate Judge's recommendation on October 16, 2019, [Doc. 185], Microsoft responded to Defendant's objections on November 8, 2019, [Doc. 190], and Defendant filed a Reply to Microsoft's Response on November 27, 2019. [Doc. 196]. Having reviewed the Magistrate Judge's PFRD and considered the parties' positions, the Court finds that the Magistrate Judge's findings are not clearly erroneous and that his conclusions are not contrary to law. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Crim. P. 59(a). Therefore, the Court **overrules** the objections and **adopts** the Magistrate Judge's PFRD.

    **I.**     **STANDARD OF REVIEW**

Defendant filed his objections "under 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Criminal Procedure 59(a) which provide de novo review of a Magistrate's finding and

recommendations." [Doc. 185, p. 1; *see also* Doc. 196, p. 1 ("Dr. Rosenschein seeks *de novo* review of the issues presented by Microsoft in its original motion under 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Criminal Procedure 59(a).")]. Microsoft did not challenge Defendant's statement of the standard of review, even though it noted that "[a]fter the motion was fully briefed this Court referred Microsoft's motion to the Magistrate Judge for decision pursuant to 28 U.S.C. § 636(b)(1)(*A*) and Fed. R. Crim. P. 59(a)." [Doc. 190, p. 3 (emphasis added)]. However, *de novo* review is the standard for dispositive recommendations, *see* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Crim. P. 59(b), and it does not apply here.

Microsoft's motion to modify a subpoena is a pretrial, non-dispositive matter. Authority for a district judge to refer such a matter to a magistrate judge in a criminal case comes from 28 U.S.C. § 636(b)(1)(A) and Fed. R. Crim. P. 59(a). If there are objections to the magistrate judge's recommendations, the district judge reviews them under a standard of "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Crim. P. 59(a) ("[t]he district judge must consider timely objections and modify or set aside any part of the order that is contrary to law or clearly erroneous.").

As the Tenth Circuit recently stated, "Rule 59 is 'derived in part from Federal Rule of Civil Procedure 72.'" *United States v. Doby*, 928 F.3d 1199, 1206 (10th Cir. 2019) (quoting Fed. R. Crim. P. 59, advisory committee's note to 2005 amendment). Thus, the Court takes guidance from the standards applicable under Fed. R. Civ. P. 72. Under Fed. R. Civ. P. 72, "[t]he clearly erroneous standard … requires the reviewing court affirm unless it 'on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Ocelot Oil Corp. v. Sparrow Industries*, 847 F.2d 1458, 1464 (10th Cir. 1988) (quoting *United States v. United States Gypsum*

*Co.*, 333 U.S. 364, 395 (1948)).[1] "Under the 'contrary to law' standard, the district judge conducts a plenary review of the magistrate judge's legal determinations, setting aside the magistrate judge's order only if it applied an incorrect legal standard." *Coll v. Stryker Corp.*, CV 14-1089 KG/SMV, 2017 WL 3190658, at *7 (D.N.M. 2017) (cited authority omitted).

## II.     BACKGROUND[2]

Defendant is charged with the distribution and possession of child pornography. [*See* Doc. 1]. Law enforcement began investigating Defendant after he sent two images through electronic service provider Chatstep, which Chatstep identified as child pornography through the use of Microsoft's PhotoDNA service. PhotoDNA is a cloud-based service developed by Microsoft in conjunction with the National Center for Missing and Exploited Children ("NCMEC") to help prevent the sharing of child pornography. It works by analyzing digital images to create a unique "hash value" of a file that is then matched against databases of hash values of known child pornography. After receiving the images from Chatstep, NCMEC did not view them, but forwarded them onto the New Mexico Attorney General's Office Internet Crimes Against Children Task Force.

Defendant issued a subpoena under Fed. R. Crim. P. 17(c) on October 11, 2018, requesting eighteen (18) separate categories of documents. [Doc. 125-1, p. 6]. Microsoft objected to the subpoena as overbroad, and, after meeting and conferring, communications between counsel for Defendant and Microsoft broke down, resulting in the instant motion practice. The Magistrate Judge summarized the parties' arguments and the Court will not revisit them here. Suffice to say,

---

[1] "As the Seventh Circuit has articulated the standard, to be clearly erroneous 'a decision must strike [the Court] as more than just maybe or probably wrong; it must … strike [the Court] as wrong with the force of a five-week-old, unrefrigerated dead fish.'" *STC.UNM v. Quest Diagnostics Inc.*, CV 17-1123 MV/KBM, 2018 WL 3539820 at *1 (D.N.M. 2018) (quoting *Parts &Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988)).

[2] Defendant does not object to any of the Magistrate Judge's background section, and the Court finds none of it to be clearly erroneous. The Court restates only the facts pertinent to its conclusion.

3

in its Motion Microsoft asked the Court to find the subpoena to be unreasonable and oppressive as drafted, and to limit Microsoft's duty to respond to specific categories of documents. [*See* Doc. 125, pp. 17-18]. Pertinent here, Microsoft asked the Court to limit its duty to produce "[i]nformation regarding the specific CyberTipline Reports in this case, dated July 31, 2016, and August 8, 2016[.]" [*Id.*].

After briefing on Microsoft's Motion was complete, the Court referred the Motion to the Magistrate Judge for decision. The Magistrate Judge issued his PFRD on October 2, 2019, recommending that Microsoft's Motion be granted and that Defendant's request for a telephonic hearing on the Motion be denied. [Doc. 183, p. 13]. The Magistrate Judge found that as drafted Defendant's subpoena read like civil discovery requests and failed to meet the specificity requirement announced in *United States v. Nixon*, 418 U.S. 683, 700 (1974). [*Id.*, pp. 10-12]. Alternatively, he found that the subpoena should be modified because Microsoft produced evidence that responding to the subpoena as drafted would be unreasonable or oppressive. [*Id.*, p. 12]. The Magistrate Judge recommended that this Court modify the subpoena and order Microsoft to produce only certain specific categories of documents. [*Id.*].

Defendant begins his objections by asserting that the Magistrate Judge applied the wrong legal standard because the subpoena is directed at Microsoft, a third party, rather than the government. [*See* Doc. 185, pp. 3-8]. Following this argument, Defendant objects to the Magistrate Judge's findings regarding the specificity of a number of his requests. [*Id.*, p. 8]. Defendant fails to acknowledge that, pursuant to the parties' agreement, the Magistrate Judge ordered Microsoft to produce information relevant to the two Cybertips at issue in this case as well as other limited information sought by the subpoena. Defendant argues that his other requests, as narrowed by the parties' negotiations, were not oppressive because of the extent of Microsoft's resources. [*Id.*, p.

4

10]. Defendant does not challenge the Magistrate Judge's finding that the subpoena as drafted should be modified as oppressive, nor Microsoft's estimate of the cost of compliance other than to claim that it "is not sufficiently particularized in Microsoft's declarations to be reliable." [*Id.*, p. 12]. Finally, Defendant asks for a hearing "to aid the Court in resolving the legal issues set forth in the briefs on the issues presented." [*Id.*, p. 13].

Microsoft's Response to Defendant's objections defends the legal standard employed by the Magistrate Judge, arguing that Defendant's proposed lesser standard "has been roundly rejected by courts across the country, including in this Circuit." [Doc. 190, p. 4]. Microsoft further argues that Defendant's objections to the Magistrate Judge's specificity analysis should be overruled, both because the Magistrate Judge correctly found the subpoena's requests to be insufficiently specific, and because "Defendant fails to acknowledge that Microsoft *already agreed* to conduct a reasonable search and produce non-privilege documents responsive to many of these requests." [*Id.*, p. 6 (emphasis in original)]. Finally, Microsoft argues in favor of the Magistrate Judge's finding that compliance with the subpoena as drafted would be oppressive. [*Id.*, pp. 7-9].

Defendant's Reply takes issue with the Magistrate Judge's observation that service providers would be forced to abandon preventative efforts if subpoenas like the one at issue were enforced in every case and accuses him of failing to properly apply the law. [*See* Doc. 196, p. 5 (stating that the Magistrate Judge's "rationale in denying Dr. Rosenschein's subpoena requests underscores the point that he considered this case to be less about specificity or evidentiary requirements and more about the magistrate judge's unfounded and improper concern that 'service providers would be forced to abandon preventative efforts.'"). Defendant also argues that "Microsoft's objections have more to do with stacking the deck against [him] than ensuring the

fair administration of justice is achieved in this case." [*Id.*, p. 8]. Finally, Defendant argues that the Court should "treat Microsoft's litigation positions and declarations with a healthy degree of skepticism" because it "protects its customers from criminal prosecution by not using PhotoDNA on its internal systems … while at the same time employing PhotoDNA to prosecute individuals who use non-Microsoft services like Chatstep." [*Id.*, p. 10]. Finally, Defendant requests a hearing before this Court to explain his position because "all of the evidence requested by Dr. Rosenschein is relevant and material for Dr. Rosenschein to prove, as an evidentiary matter, that NCMEC acquiesced in Microsoft's employing the PhotoDNA search tool, and that Microsoft intended to assist law enforcement agencies and criminal prosecutions by providing this service for free to NCMEC and other qualified entities." [*Id.*, p. 11]. For the reasons explained below, the Court overrules Defendant's objections.

### III. ANALYSIS

**A) Defendant's objection that the PFRD applied the wrong legal standard is overruled.**

In *Nixon* the Supreme Court addressed the standard to be met by a party issuing a subpoena pursuant to Fed. R. Crim. P. 17(c). As the Court said, "[a] subpoena for documents may be quashed if their production would be 'unreasonable or oppressive,' but not otherwise." *Nixon*, 418 U.S. at 698. The Court then interpreted the leading cases in this area to conclude that to meet this burden the proponent of a Rule 17(c) subpoena "must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." *Id*. at 700. Finding that this standard was met, the Court declined to decide if a lower standard applies to subpoenas issued to third parties, as opposed to the government. *See id.* at n.12. Seizing upon this language, Defendant argues that "[s]everal Courts, including Courts within this District, have found that the standard articulated in *Nixon* for specificity under Rule 17(c) subpoenas is lower for third parties than it is for subpoenas directed to the government."

6

[Doc. 185, p. 3 (citing *U.S. v. Grobstein*, 2013 WL 12334156, at *3 (D.N.M. Apr. 26, 2013) (Vazquez, J.) (unreported)]. While it is true that, in *Grobstein*, Judge Vazquez opined that "this reading of Rule 17(c) is, in fact, consistent with Supreme Court precedent[,]" 2013 WL 12334156, at *3, the Court is not convinced by Defendant's argument for three reasons.

First, Judge Vazquez' opinion in *Grobstein* was careful to honor the Supreme Court's admonition that "the plain words of [Rule 17(c)] are not to be ignored. They must be given their ordinary meaning to carry out the purpose of establishing a more liberal policy for the production, inspection and use of materials at the trial[.]" *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951); *see Grobstein*, 2013 WL 12334156, at *3. On the facts in *Grobstein*, Judge Vazquez concluded that a lesser standard applies when a subpoena is directed to a third party. Although the *Bowman Dairy Co.* Court stated that, "[i]n short, any document or other materials, admissible as evidence, obtained by the Government by solicitation or voluntarily from third persons is subject to subpoena," it also made explicit that "catch-all" provisions which are "not intended to produce evidentiary materials but [are] merely a fishing expedition to see what may turn up [are] invalid." 341 U.S. at 221. Thus, while Rule 17(c) subpoenas are available to secure specific, relevant and admissible evidence from third parties, nothing in *Bowman Dairy Co.* permits them to sweep broadly "to see what may turn up." *Id.* In other words, a lesser standard should not apply simply because a subpoena is directed at a third party.

Second, even though the *Nixon* Court did not address the issue, subsequent "cases from the overwhelming majority of courts have applied the *Nixon* test[]" to subpoenas issued to third parties. *United States v. Nelson*, CR 15-2023 MV, 2015 WL 9943540, at *3 n. 1 (D.N.M. Dec. 4, 2015) (Vazquez, J.) (unpublished) (citation omitted). Judge Vazquez recognized in *Nelson* that "[a]lthough 'a few district courts' have applied a lower evidentiary standard in the context of third-

7

party subpoenas, application of a lower standard 'has very limited support and is in a distinct minority view.'" *Id.* Two years after she decided *Grobstein*, Judge Vazquez found "no reason to eschew 'the great weight of authority' and apply any standard other than that set forth by the Supreme Court in *Nixon*." *Id*.

Finally, when this Court has considered Rule 17(c) subpoenas to third parties in previous cases, it has followed *Nixon*'s requirements, reasoning that "[t]he specificity requirement also prevents a subpoena duces tecum issued pursuant to Rule 17(c) from being used as a 'fishing expedition to see what may turn up.'" *United States v. Gomez-Guzman*, CR 17-2381 JCH, 2017 WL 4162256, at *3 (D.N.M. Sept. 18, 2017) (Herrera, J.) (unpublished) (quoting *Bowman Dairy Co.*, 341 U.S. at 221); *see also United States v. McCluskey*, CR 10-2734 JCH, 2012 WL 13081296, at *1 (D.N.M. May 11, 2012) (Herrera, J.). Defendant has not convinced the Court to depart from its previous rulings and adopt a lesser standard here. Therefore, Defendant's objection that the PFRD applied the wrong legal standard to his Rule 17(c) subpoena is overruled.

**B) Defendant's objections to the recommended specificity findings are overruled.**

As the Magistrate Judge correctly recognized, Rule 17(c) was never intended to be a tool for discovery. *See Nixon*, 418 U.S. at 698. Thus, if Defendant's subpoena to Microsoft is not directed at specific admissible evidence, the Court may modify or quash the subpoena. *See United States v. Abdush-Shakur*, 465 F.3d 458, 467 (10th Cir. 2006). As the Magistrate Judge recognized, "[s]pecificity is the most difficult hurdle to overcome." [Doc. 183, p. 9 (citing *United States v. Wittig*, 247 F.R.D. 661, 663 (D. Kan. 2008)]. "*Nixon* mandates that the party requesting the information identify the item sought and what the item contains, among other things." *United States v. Morris*, 287 F.3d 985, 991 (10th Cir. 2002). Failure to clear the *Nixon* hurdles will result

in modification of the subpoena. *Id*. In sum, contrary to Defendant's position, a Rule 17(c) subpoena may not be used for "impermissible discovery purposes." *Id.*

The question before the Court is a narrow one. Having found that the Magistrate Judge applied the correct legal standard, the Court must determine whether he clearly erred in determining that Defendant's Rule 17(c) requests to Microsoft were not sufficiently specific. Having conducted this deferential review, the Court concludes that Defendant's requests, which he freely admits are aimed at discovering information which he does not presently know exists, [*see* Doc. 185, p. 5 ("So the Magistrate Judge was wrong to suggest that Rule 17(c) is not a discovery device; it most certainly is.")], failed to conform to Rule 17(c)'s specificity requirement. The proponent of a Rule 17(c) subpoena must be able to identify the item sought and what the item contains. Defendant has failed to articulate how his requests, even as modified, are sufficiently specific under the *Nixon* test because they fail to identify the items sought and their contents. [*See* Doc. 185, pp. 8-10].

Even assuming for the purpose of argument that the Magistrate Judge erred in his analysis, Defendant has failed to specify how the documents that Microsoft has already agreed to provide, and which the Magistrate Judge recommended be disclosed, do not satisfy his requests as narrowed. Microsoft has agreed to produce a specific set of documents relevant to the specific Cybertipline reports in this case. Additionally, Microsoft must produce agreements pertaining to PhotoDNA between Microsoft and any federal law enforcement agency or State Attorney General; agreements between Microsoft and third parties regarding hash sharing; guidelines, memorandums of understanding, policies, procedures, or Terms of Service that were applicable to the Microsoft/Chatstep or Microsoft/NCMEC relationship in July or August 2016; and, correspondence between Microsoft and Chatstep regarding Chatstep's use of the PhotoDNA

9

service. [Doc. 183, p. 14]. These appear to be the majority of the documents that Defendant seeks through his subpoena. [*See* Doc. 196, p. 4]. Therefore, Defendant's specificity objections are overruled.

**C) The Court does not reach Defendant's objections to the recommended finding that the subpoena as drafted was unreasonable or oppressive.**

In addition to his specificity finding, the Magistrate Judge found that the cost of compliance with the subpoena would be unreasonable or oppressive as issued to third-party Microsoft based on evidence that the cost of compliance would total over one million dollars ($1,000,000.00) as drafted and hundreds of thousands of dollars as modified by the parties' negotiations. [*See* Doc. 183, p. 12]. The Magistrate Judge observed that if every defendant in a child pornography case could levy such requests on service providers, they would be forced to abandon preventative efforts. [*Id.*].

Having concluded that The Magistrate Judge was correct in ruling that Defendant's requests lacked the requisite specificity, the Court need not reach Defendant's objections to his conclusion that the subpoena was unreasonable or oppressive.

**D) Defendant's request for a hearing on these issues is denied.**

As the Magistrate Judge recognized, there is no requirement for a hearing in these circumstances, and Defendant has presented no factual dispute that needs to be explored in an evidentiary hearing. [Doc. 183, p. 13]. Notably, in his objections Defendant "reasserts his request for a hearing to aid the Court in resolving the *legal* issues set for in the briefs on the issues presented." [Doc. 185, p. 12 (emphasis added)]. The Court finds that the legal issues presented herein can be decided on the briefs. Therefore, the Court will deny Defendant's request for a hearing.

## IV. CONCLUSION

The applicable standard sets a high bar to justify alteration of the magistrate judge's pretrial decisions by the District Judge. In order to do so, the objecting party must clearly convince this Court that the Magistrate Judge erred as a matter of fact and as a matter of law. Defendant has failed to meet this heavy burden here.

**IT IS THEREFORE ORDERED** that *Defendant Dr. Rosenschein's Objections to the Magistrate Judge's Propposed Findings and Recommended Disposition* [Doc. 185; Doc. 196] are **OVERRULED**, the *Proposed Findings and Recommended Disposition* of the Magistrate Judge [Doc. 183], filed October 2, 2019, are hereby **ADOPTED**. Accordingly, *Non-Party Microsoft Corporation's Motion to Modify Rule 17(c) Subpoena* [Doc. 125] is **GRANTED**, and Defendant Rosenschein's *Request for Telephonic Hearing on Non-Party Microsoft Corporation's Motion to Modify Rule 17(c) Subpoena* [Doc. 141] is **DENIED**.

**IT IS FURTHER ORDERED** that within 14 days of the entry of this Memorandum Opinion and Order, Microsoft must produce the following specific categories of documents to Defendant, but no others:

- Agreements pertaining to PhotoDNA between Microsoft and any federal law enforcement agency or State Attorney General;

- Agreements between Microsoft and third parties regarding hash sharing;

- Information regarding the specific CyberTipline Reports in this case, dated July 31, 2016, and August 8, 2016;

- Guidelines, memorandums of understanding, policies, procedures, or Terms of Service that were applicable to the Microsoft/Chatstep or Microsoft/NCMEC relationship in July or August 2016;

- With respect to email correspondence, only those emails exchanged between Microsoft and Chatstep regarding Chatstep's use of the PhotoDNA Cloud Service, including any correspondence regarding how Chatstep came to locate Microsoft's PhotoDNA Cloud Service.

[*See* Doc. 125, pp. 17-18].

_____
**UNITED STATES DISTRICT JUDGE**