**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**vs.** **CR. No. 16-4571 JCH**

**GUY ROSENSCHEIN,**

**Defendant.**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on two closely related motions: *The National Center for Missing and Exploited Children's Motion to Intervene and to Vacate the Court's May 30, 2019 Order* [Doc. 160] and the *United States' Motion to Reconsider the Court's Memorandum Opinion and Order Granting Defendant's Motion to Compel NCMEC Materials* [Doc. 163]. The object of both motions is the same—to persuade the Court to reconsider its Memorandum Opinion and Order entered on May 30, 2019 [Doc. 151], in which it held after an evidentiary hearing that the National Center for Missing and Exploited Children ("NCMEC") is a member of the prosecution team for purposes of Fed. R. Crim. Pro. 16 in this case. Both NCMEC and the Government argue that the Court should reconsider its ruling based on new evidence not previously before the Court because NCMEC is not a party in this case and was not able to present evidence at the hearing. After reviewing both motions as well as the responses [Docs. 161, 162, and 168] and replies [Doc. 164, 165, and 170] thereto, the Court concludes that NCMEC should be permitted to intervene in the case for the limited purpose of bringing this motion, that the motion should be construed as one for reconsideration, and that it should be denied.

# DISCUSSION

## I. INTERVENTION

The Federal Rules of Criminal Procedure contain no mechanism for third party intervention in the proceedings. However, despite a lack of authority in the criminal rules, motions to intervene in criminal proceedings have been granted in limited circumstances where "a third party's constitutional or other federal rights are implicated by the resolution of a particular motion, request, or other issue during the course of a criminal case." *United States v. Carmichael*, 342 F. Supp. 2d 1070, 1072 (M.D. Ala. 2004). NCMEC contends that requiring it to produce documents under Rule 16 "jeopardizes its due process right to be free from unreasonable and oppressive discovery requests, as well as its right to protect confidential documents from disclosure, without having notice of the hearing at which these issues would be determined." Doc. 160 at 8. In support of its argument, NCMEC cites *Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012) and *In re Letters Rogatory from Tokyo Dist.*, 539 F.2d 1216, 1219, (9th Cir. 1976) for the proposition that a party has a due process right to object to a subpoena. Rosenschein contends that NCMEC has no right to object to the Rule 16 motion to compel because it does not seek to protect privileged information. However, the caselaw requires only that a party seek to protect its rights and are not limited to protecting privilege. The Court concludes that the right to intervene is not limited to those instances in which a party objects to protect privileged information.

Rosenschein contends that the motion to intervene is untimely because NCMEC had prior notice of his motion to compel. Thus, the Court must examine the timeline of events in this case to determine whether NCMEC's motion is impermissibly late.

In September of 2017, Rosenschein's counsel wrote a letter to the United States Attorney's Office requesting discovery from NCMEC. FBI Agent Kyle Hartsock forwarded the request via email to Yiota Souras, NCMEC's Senior Vice President and General Counsel. The Government responded to Rosenschein, saying that the requested materials were not in its possession, custody, or control, and urging him to request the information directly from NCMEC. Doc. 65 at 3-4. On March 9, 2018, Rosenschein filed his Rule 16 motion [Doc. 57] to compel the Government to produce discovery from NCMEC. In March and in June of 2016, counsel for the Government contacted NCMEC's counsel about the motion. The motion to compel was fully briefed on August 8, 2018.

In the meantime, Rosenschein did not await a ruling on his motion to compel, but rather on July 24, 2018 filed a motion requesting leave to serve NCMEC with a Rule 17(c) subpoena seeking the same documents at issue in the Rule 16 motion to compel. [Doc. 100]. On September 19, 2018, the Court granted in part [Doc. 113] Rosenschein's request for a subpoena. Rosenschein served the subpoena on NCMEC in October of 2018. In response, NCMEC produced over 600 pages of documents to Rosenschein while also objecting to portions of the subpoena as overbroad and unduly burdensome. According to NCMEC, on more than one occasion it asked counsel for Rosenschein to engage in discussions about the objections in an effort to reach a compromise, but despite agreeing to do so, Rosenschein's counsel never actually engaged in those discussions. Rosenschein does not dispute this assertion.

On April 4, 2019, the Court held a hearing on the motion to compel. As a non-party, NCMEC did not receive notice of the hearing from the Court, and it appears that neither the Government nor Rosenschein forwarded notice to NCMEC either. On May 30, 2019, the Court

entered a Memorandum Opinion and Order [Doc. 151] granting in part Rosenschein's motion to compel under Rule 16. NCMEC filed its motion to intervene a few weeks later, on June 16, 2019.

NCMEC argues that while it was acting in good faith to produce documents pursuant to the Rule 17(c) subpoena and to reach a compromise with Rosenschein on its objections, the Court's ruling on the motion to compel—coupled with Rosenschein's failure to advise NCMEC that he continued to pursue that motion despite NCMEC's cooperation on the subpoena—cut short the Rule 17(c) process. It contends that Rosenschein set in motion and then circumvented Rule 17(c), and in doing so deprived NCMEC of its due process rights, all while failing to mention to NCMEC's counsel that a hearing was going to take place. Rosenschein, in turn, argues that NCMEC should have moved to intervene as early as March of 2016, when the Government alerted NCMEC that he had filed a Rule 16 motion to compel.

The Court concludes that NCMEC should have an opportunity to intervene in this case for the limited purpose of asking the Court to reconsider its ruling on the motion to compel. NCMEC was not unreasonable in its belief that it was working with Rosenschein through the Rule 17(c) subpoena process and that it did not need to get involved in the Rule 16 motion with which it was not formally served and to which it was not a party. Rosenschein pursued two alternative paths to obtaining discovery from NCMEC. One of those paths, Rule 17, led to the production of over 600 documents (some of which Rosenschein has relied upon in this case), but when that method of obtaining discovery led to obstacles, Rosenschein switched to a procedural path not open to NCMEC. While this strategy is not against the rules as such, the Court finds it to be inequitable to permit Rosenschein "two bites at the apple" on the issue without permitting NCMEC an opportunity to respond. In addition, the Court ruled on the Rule 16 motion based on the record put before it by Rosenschein and the Government. That decision was heavily fact-based and relied on

a record regarding the nature and actions of NCMEC—a record into which NCMEC had no input and which it claims was inaccurate and incomplete. Fundamental fairness would seem to require a fully developed record to determine whether or not NCMEC is, in fact, part of the prosecution team in this case. Accordingly, the Court will permit NCMEC to intervene to file its motion to reconsider.

## II. LEGAL STANDARD FOR RECONSIDERATION

The Court interprets NCMEC's motion as one for reconsideration of its May 30, 2019, order. The Tenth Circuit has held that a motion to reconsider may be granted when the court has misapprehended the facts, a party's position, or the law. *Servants of The Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). Specific situations where circumstances may warrant reconsideration include "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Id*. "A motion to reconsider is not a second chance for the losing party to make its strongest case or to dress up arguments that previously failed." *United States v. Huff*, 782 F.3d 1221, 1224 (10th Cir. 2015) (quoting *Voelkel v. Gen. Motors Corp*., 846 F. Supp. 1482, 1483 (D. Kan. 1994)).

Here, NCMEC contends that the Court should reconsider in light of new evidence provided by NCMEC that was not available to the Court at the prior hearing. *See* Doc. 160 at 10-12. NCMEC also suggests that the Court misinterpreted the caselaw on determining whether an entity is a member of the prosecution team.

## III. THE COURT'S PRIOR OPINION

In its Memorandum Opinion and Order of May 30, 2019, the Court concluded that NCMEC is part of the prosecution team in this case for discovery purposes. As grounds for that conclusion, the Court observed that under binding Tenth Circuit authority, *United States v. Ackerman,* 831 F.3d 1292 (10th Cir. 2016), NCMEC is a governmental agency with a law enforcement purpose. The Court then noted that under *Smith v. Sec'y of N.M. Dep't of Corr*., 50 F.3d 801, 824 (10th Cir. 1995), the prosecution includes arms of the state (like NCMEC) involved in investigative aspects of a particular criminal venture. Finally, the Court observed that NCMEC did conduct—as it is charged to do by statute—a limited investigation into the facts of this case. NCMEC used public sources to identify the location of the suspected internet user through the IP address provided in the CyberTipline reports and then forwarded them to the New Mexico Attorney General's Office. Later, after law enforcement obtained electronic materials from Rosenschein's home, law enforcement sent those files to NCMEC for analysis in order to obtain more information to aid in the investigation and prosecution. NCMEC provided that information to the Attorney General's Office. Thus, the Court found that NCMEC is a government agency that was involved in the investigation of the case and which provided information to the government in aid of the prosecution.

## IV. ANALYSIS

### A. <u>New Facts Offered by NCMEC</u>

NCMEC seeks to correct incorrect statements of fact made by the defense at the hearing. While the Court appreciates NCMEC's efforts to create an accurate record, none of the corrections alter the Court's analysis.

First, NCMEC notes that the defense characterized CyberTipline reports as criminal complaints, and it notes that this is untrue; such reports are neither criminal complaints, not charging documents, or even accusations. Doc. 160 at 10. The Court agrees with NCMEC on this point. However, in reaching its prior decision the Court did not consider the CyberTipline reports in this case to be criminal complaints or charging documents, but rather information collected by NCMEC that, when sent to the New Mexico authorities, kicked off their criminal investigation. This "correction" does not alter the Court's analysis.

Second, NCMEC asserts that it does not "investigate" CyberTipline Reports and does not review the images attached thereto. According to NCMEC, all it did in this case as look up Defendant's IP address on a publicly available website to determine where the potential offender might be located, and then forward the reports to local law enforcement. Again, NCMEC is not offering information that is different from or in conflict with anything relied upon by the Court in its previous decision. The Court acknowledged that NCMEC did not review the images and that NCMEC had looked up the IP address on a public website. At no point did the Court state that NCMEC was "privy to ongoing investigation details about the case." Doc. 160 at 11.

Third, NCMEC opposes defense counsel's statement that NCMEC had participated in the investigation that led to a superseding indictment in this case. It also states that its Child Victim Identification Program ("CVIP")—which it states is unrelated to the CyberTipline, although it is unclear why that is relevant—assists law enforcement in determining whether children depicted in suspected child pornography have been previously identified. Nowhere in the Court's previous opinion did it conclude that NCMEC was directly involved in grand jury proceedings that led to the superseding indictment. The Court, however, did rely upon the evidence that Detective Kyle Hartsock of the Bernalillo Count Sheriff's Office sent 1,120 files obtained from Defendant's home

to NCMEC in order to obtain information to aid in his investigation through the CVIP process. In response, NCMEC reported that it recognized the hash values on 174 of the files, and that 41 files contained images of a child or children previously identified by law enforcement and therefore are real children. NCMEC does not assert that this did not occur. These actions were part of the investigation and aided the subsequent prosecution of Defendant.

In support of this conclusion, there is evidence that the Department of Justice itself sees NCMEC's CVIP process as a way to help law enforcement investigate and prove crimes involving child pornography. Perhaps most telling is the DOJ's report to Congress titled, "The National Strategy for Child Exploitation Prevention and Interdiction," (2010). *See* Doc. 162-8. In that report, the DOJ has this to say about its CVIP program:

> NCMEC's Child Victim Identification Program (CVIP) has a dual mission: (1) *to help prosecutors obtain convictions by proving that a real child is depicted in child pornography images*; *and (2) to assist law enforcement in locating unidentified child victims.* NCMECs Child Victim Identification Program has reviewed more than 28.5 million child pornography images and videos in order to identify and rescue child victims, and has disseminated 19,800 reports to prosecutors in support of their cases against child sexual predators. Because of the United States Supreme Court's holding in *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002), federal prosecutors need to prove that the children depicted in child pornography images are real children. Local and federal law enforcement agencies submit copies of seized child pornography to federal law enforcement agencies assigned to NCMEC, accompanied by a written request that the images be reviewed for apparent identified children. NCMEC then provides a report to the submitting law enforcement agency listing the files that contain identified child victim as well as detailed information about the law enforcement officer who identified each child victim; those officers can then provide any evidence needed in court. *Essentially CVIP acts as a law enforcement pointer system. A critical function of CVIP is the effort to assist law enforcement agencies in rescuing the child victims depicted in these images from their abusers.* While reviewing contraband, CVIP analysts closely examine the images and videos submitted by law enforcement and document any clues that may lead to the location of an unidentified child victim. Once a location has been determined, the appropriate law enforcement agency may begin an investigation to rescue the child(ren). CVIP requests notification and basic case information when a victim of child pornography is identified by law enforcement. *Working with federal law enforcement partners, information about*

> *such investigations is added to NCMEC's system. The addition of this information increases the value of CVIP's reviews by assisting in the prosecution of other offenders.*

*Id*. at 94, 101 of 280 (emphasis added). The purpose and goals of the CVIP are indubitably laudable. However, it is clear that the program is designed to assist law enforcement in both investigating and prosecuting crimes. Based upon the evidence before the Court, this appears to have been precisely the role NCMEC played in this case by using CVIP to provide information to Detective Hartsock to help prove the identity of child victims in order to overcome any challenge the defense might raise under *Ashcroft*. Thus, NCMEC's assertions do not alter the Court's conclusion that NCMEC did provide information into the government in aid of the investigation and eventual prosecution of the case.

Fourth, NCMEC points out that defense counsel presented inaccurate information regarding the composition of NCMEC's governing board. At the hearing, defense counsel asserted that Congress mandated that Department of Justice officials serve on NCMEC's board of directors. According to NCMEC, such officials were not appointed by the federal government, had no fiduciary duty to NCMEC, and retained no right to vote on issues regarding the management and oversight of NCMEC. In its brief, NCMEC clarifies that on March 10, 2017, NCMEC amended its bylaws to remove all law enforcement members from the board, and none of its employees work for the Department of Justice.[1] Again, the composition of NCMEC's board was not a factor relied on by this Court in concluding that NCMEC is part of the prosecution team in this case. However, in *United States v. Ackerman*, 831 F.3d 1292 (10th Cir. 2016), the Tenth Circuit did

[1] In any event, this change to NCMEC's board occurred after NCMEC performed its initial investigative work in this case.

refer to the presence of law enforcement officials on NCMEC's board as a factor that led it conclude that NMCEC is a governmental entity, much like Amtrak. *Id*. at 1297-98 and n.5. If NCMEC is arguing that the change in the composition of its board would lead the Tenth Circuit to a different result, this Court must disagree. The Tenth Circuit's *Ackerman* decision was based upon a host of factors—e.g., the statutory grant of law enforcement powers (and obligation to use them) far beyond those enjoyed by private citizens, dependence on federal funding, and the benefit to the public of NCMEC's work—of which board membership was only one.

Fifth, NCMEC contradicts defense counsel's assertion that its hash value databases are updated daily or hourly, and that as a result of this frequent updating, NCMEC has ongoing knowledge of what Microsoft and Chatstep are doing. In fact, NCMEC explains, the lists of hash values are updated only a few times per year, and NCMEC has no knowledge of what Microsoft and Chatstep are doing. However, this proffered fact does not bear on the Court's decision, which in no way turned on the frequency with which the hash value databases are updated.

Finally, NCMEC seeks to clarify that it has no Electronic Crimes Division or Electronic Crimes Unit, but it does have an Exploited Children Division, of which John Shehan is Vice President. Again, the Court did not rely upon defense counsel's misstatements to the contrary. The new information regarding nomenclature alters no part of the analysis.

**B. <u>Legal Arguments Offered by NCMEC</u>**

NCMEC cites no new caselaw in its motion, but rather it argues that the Court misapplied existing law—bare as it is—in its previous decision. NCMEC seeks to distinguish *McCormick v. Parker*, 821 F.3d 1240, 1247 (10th Cir. 2016), in which a sexual assault nurse examiner was found to be a member of the prosecution team when she examined a rape victim at the behest of law enforcement and then testified that she had kept a record of the exam to prepare herself to testify

later. *Id*. Based on those facts, the Tenth Circuit concluded that the nurse was part of the prosecution team for *Brady* purposes because "she acted at the request of law enforcement in the pre-arrest investigation of a crime." *Id*. at 1247-48. NCMEC argues that unlike the nurse in *McCormick*, NCMEC is a private, non-profit, non-governmental entity. Unfortunately for NCMEC, the Tenth Circuit's decision in *Ackerman* has foreclosed that argument. Next, NCMEC contends that *McCormick* is distinguishable because in that case the police investigation had already begun before the nurse's examination, and because the nurse was working directly for the police. Although admittedly some of the circumstances are different, NCMEC is much like the SANE nurse in *McCormick*. While she was a government employee, NCMEC is a governmental agency. And both the nurse and NCMEC gathered information and provided it to investigators for the purpose of aiding the prosecution. The fact that NCMEC received information from Chatstep before law enforcement was aware of a possible crime does not alter the analysis. NCMEC characterizes its involvement as "the mere sharing of information" with law enforcement. Doc. 160 at 13. While it might be possible to characterize NCMEC's initial forwarding of CyberTipline Reports to law enforcement in this manner, the same cannot be said of the investigation it performed through CVIP. That portion of the investigation was done at the request of law enforcement, and the record demonstrates that it was for the express purpose of aiding the prosecution.

NCMEC discounts the Tenth Circuit's unpublished decision in *United States v. Webb*, 651 Fed. Appx. 740, 744 (10th Cir. June 2, 2016), in which the court stated, "the U.S. Attorney's Office is not required to disclose information it is unaware of and that is in the possession of a separate federal agency not involved in the prosecution or investigation of the present case." As NCMEC points out, the *Webb* court did not explain what constitutes "involvement in the prosecution or

investigation" of a case. The Court has noted that precedent in this area is scarce. However, as discussed above, the Department of Justice itself appears to regard NCMECs' CVIP program as one that assists in the investigation and prosecution of offenders. Further, it appears that NCMEC did perform that function in this particular case.

NCMEC's attempts to discount *United States v. Boutte* are similarly unavailing. In that case, this court noted that it will not compel the government to seek and produce "information from agencies … who are not collaborating in [the] prosecution *or who have not provided information to the government* in connection with this case." 2019 WL 885935 at *3 (D.N.M. Feb. 22, 2019) (Carson, J., sitting by designation) (unpublished) (emphasis added). According to NCMEC, an entity cannot be a member of the prosecution team merely because it provided information to the prosecution. *See* Doc. 160 at 14-15. That statement is true, as far as it goes. NCMEC follows it up with the assertion that other than forwarding CyberTipline Reports, it merely provides law enforcement with "technical consultation." *Id*. at 15. However, NCMEC overlooks the fact that not only is it a governmental entity statutorily required to provide certain information to law enforcement (CyberTipline Reports), but that through its investigation it provided further information to the prosecution through CVIP with the specific purpose of aiding the prosecution.

Finally, NCMEC argues that the Court misapplied the Third Circuit's decision in *United States v. Pelullo*, 399 F.3d 197, 218 (3d Cir. 2005), in which the court held that disclosure of documents collected by the Pension and Welfare Benefits Administration (PWBA), the civil branch of the Department of Labor (DOL), was not required under *Brady*. The Court reasoned that there was "no indication that the prosecution and PWBA engaged in a joint investigation or otherwise shared labor and resources," nor "any indication that the prosecution had any sort of

control over the PWBA officials who were collecting documents." *Id*. According to NCMEC, it is like PWBA because the prosecution lacks control over NCMEC officials who were collecting information. Of course, that ignores the fact that unlike NCMEC, the PWBA does not have a law enforcement purpose, is not statutorily required to forward information to law enforcement for the purpose of enabling their investigations, is not funded by the Department of Justice, does not have members of law enforcement on its board (as NCMEC did during the relevant time period), and does not have assisting law enforcement as its primary purpose (as characterized by the DOJ in its report to Congress).

The Court therefore concludes that NCMEC has not shown that it committed clear error in ruling that NCMEC is part of the prosecution team in this case. Nor is the Court persuaded that it should alter its analysis based on NCMEC's newly proffered facts. In light of the foregoing, NCMEC's motion to reconsider will be denied.

**C. The Government's Motion**

The Government's motion to reconsider [Doc. 163] puts forth the same arguments as NCMEC does in its own motion. Rather than repeat those arguments here, the Court will deny the Government's motions for the same reasons explained herein.

**D. Clarification**

In its May 30, 2019 Memorandum Opinion and Order [Doc. 151], the Court stated, "It was NCMEC's acts of investigating the location and providing CyberTipline information to the geographically appropriate law enforcement agency that effectively commenced the prosecution of this case." Id. at 17. The Court would clarify that statement by correcting it to say that by forwarding the CyberTipline Repots to law enforcement, *NCMEC effectively commenced law enforcement's investigation of this case*. And, as it stated in its previous Memorandum Opinion

and Order, the Court's conclusion is based on the facts of this case only; it is not intended to have broader application.

**IT IS THEREFORE ORDERED** that *The National Center for Missing and Exploited Children's Motion to Intervene and to Vacate the Court's May 30, 2019 Order* [Doc. 160] is **DENIED**, and the *United States' Motion to Reconsider the Court's Memorandum Opinion and Order Granting Defendant's Motion to Compel NCMEC Materials* [Doc. 163] is **DENIED**.

**UNITED STATES DISTRICT JUDGE**