**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**vs.** **CR. No. 16-4571 JCH**

**GUY ROSENSCHEIN,**

**Defendant.**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on *Jessica Hines's Motion Quash Subpoena* [Docs. 208, 209] and *The National Center for Missing and Exploited Children's Motion to Quash Subpoenas to Its Senior Vice President, General Counsel, and President and CEO* [Doc. 210]. The Court has reviewed the motions as well as the responses [Docs. 221, 222] and replies [Docs. 229, 230]. After considering the arguments and the relevant legal precedents, the Court concludes that Ms. Hines' motion should be denied, and NCMEC's motion should be granted.

**BACKGROUND**

The procedural and factual history of this case has been well tread in previous orders of this Court, and thus the Court limits discussion of the background to those events that are directly relevant to the present motion.

Defendant has filed three motions to suppress evidence in this case, which are set for evidentiary hearing on July 27, 2020. The witness subpoenas currently at issue relate to that hearing. In the first motion [Doc. 71], Defendant contends that Bernalillo County Sheriff's Office Detective Kyle Hartsock's affidavit in support of the search warrant for Defendant's home

contained recklessly misleading information and omitted critical information, thereby undermining the validity of the warrant. In the second motion [Doc. 74], Defendant contends that Microsoft has acted as a government agent by designing and providing its PhotoDNA service to electronic communication service providers, or ISPs. This motion turns on two premises: that Microsoft is NCMEC's agent (and therefore a government agent) and that PhotoDNA "searches" and "seizes" online images when it generates hash values. In his third motion to suppress, Defendant argues that Hartsock improperly viewed images that had been emailed by Defendant without a warrant to do so, and then sought a warrant to search Defendant's home based on viewing those images. Defendant contends that Hartsock's affidavit failed to inform the judge that he had viewed the images without a warrant, failed to give a detailed description of the images, and failed to attach the images to his affidavit. Defendant contends that without these things, there was no probable cause for the warrant.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 17(a) governs subpoenas *ad testificandum* in criminal proceedings. However, the Rule is silent as to whether such subpoenas may be quashed or modified. On the other hand, the proponent of a subpoena under Federal Rule of Criminal Procedure 17(c) bears the burden of proving that it is not "unreasonable or oppressive." *See U.S. v. Nixon*, 418 U.S. 683, 698-699 (1974). As the First Circuit has stated, "[r]oughly the same standard applies to subpoenas compelling the attendance of witnesses, i.e., subpoenas ad testificandum." *Stern v. U.S. Dist. Court for the Dist. Of Mass*., 214 F.3d 4, 17 (1st Cir. 2000) ("Although Rule 17(a), which governs such subpoenas, does not provide explicitly for quashal or modification, courts routinely have entertained motions seeking such relief and decided them by reference to comparable principles."). "Specifically, a subpoena ad testificandum survives scrutiny

if the party serving it can show that the testimony sought is both relevant and material." *Id*. (citations omitted); *see also United States v. Black*, 2018 WL 2208298, Case No. 16-CR-20032-JAR (D. Kan. May 14, 2018) (denying motion to quash Rule 17(a) subpoena because the testimony was relevant) (unpublished); *United States v. Santiestevan*, 2012 WL 2875949, No. 11-cr-00406-CMA (D. Colo. July 12, 2012) (unpublished) (finding that a motion to quash should be denied if the party serving it can show that the testimony sought is both relevant and material); *United States v. North*, 713 F. Supp. 1448, 1449 (D.D.C. 1989) ("[T]he Court is required to determine whether or not defendant has established that Mr. Reagan's appearance is necessary to assure defendant a fair trial."). On the other hand, there is no violation of Rule 17(a) where a subpoena is quashed for seeking testimony which is cumulative or immaterial to the defense. *U.S. v. Beasley*, 479 F.2d 1124, 1128 (5th Cir. 1973). As the Supreme court has explained, Rule 17 may not be used to conduct a general "fishing expedition." *Nixon*, 418 U.S. at 699-700.

## DISCUSSION

### I. Jessica Hines' Motion to Quash

Jessica Hines, a former CyberTipline analyst at the National Center for Missing and Exploited Children ("NCMEC") who left the organization in February of 2019, has moved the Court for an order quashing Defendant's Rule 17(a) subpoena calling her to testify at the hearing on his motions to suppress. She argues that she does not possess knowledge relevant to the suppression motions and as a former employee has no ability to obtain NCMEC information. Hines contends that she "never had any relevant decision-making authority at NCMEC, did not handle the CyberTipline reports at issue in this case, and has no unique personal knowledge or information relating to any relevant conduct." Doc. 208 at 1. *See also* Doc. 209 at 1 and Doc. 209-1. She argues that John Shehan, Vice President of NCMEC's Exploited Children Division and the individual

responsible for CyberTipline operations, is in a better position to testify about the CyberTipline and is already set to attend the hearing.

In response, Defendant argues[1] that Ms. Hines' testimony is relevant to his claim that Microsoft was an agent of NCMEC, and therefore was a government agent working with law enforcement to search for and seize contraband on the internet. He points to email communications involving Ms. Hines in the months before the first CyberTipline Reports in this case. According to those emails, in early June of 2016 Ms. Hines communicated with Sundeep Gottipati of Chatstep about complaints from law enforcement officers about missing or incorrect data in CyberTipline Reports originating from Chatstep. Ms. Hines then asked Chapstep to suspend its CyberTipline reporting until the problem could be remedied. Later, when Gottipati informed Hines that Chatstep was unable to fix the problem, he contacted Greg Clark and Sudipto Rakshit of Microsoft. Although in the exhibit provided to the Court some of the messages are illegible, it appears that Ms. Hines actively participated in some of these email messages with Chatstep and Microsoft personnel, but she was only copied on others. The emails provided to the Court terminate in late June of 2016. According to Defendant, these emails sent over a roughly three-week period demonstrate that "Ms. Hines' testimony is indispensable to show that Microsoft was fixing the CyberTipline reporting system at the request of law enforcement officers so the CyberTipline reports would contain the information law enforcement officer who prosecute these cases wanted

[1] In his responses to both motions before the Court, Defendant raises his rights under the Confrontation Clause of the Sixth Amendment. That provision gives a defendant the right to be confronted with the witnesses who testify against him. The Court struggles to see the relevance of the Confrontation Clause to these motions. What is at issue here is not Defendant's right to confront a witness being put forth by the Government, but rather whether he may call certain witnesses to testify *in his defense* at a pretrial hearing. The Confrontation Clause having no bearing on the issues before it, the Court will not address the arguments further.

them to have." Doc. 221 at 3. Defendant argues that these emails go directly to Microsoft's intent to aid law enforcement via its PhotoDNA program, and that John Shehan—the Government's proffered NCMEC witness, who was not involved in the email exchange—has no personal knowledge regarding this particular collaboration among NCMEC, Chatstep, and Microsoft. He contends that it is Microsoft's efforts and intent to assist law enforcement goes to whether it is a government agent, a central issue in its motions to suppress. *See* Doc. 221 at 7.

In its reply, NCMEC argues that as a former NCMEC employee, Hines is not in a position to talk about ChatStep's or Microsoft's willingness, efforts, or intent to assist law enforcement because only ChatStep or Microsoft can provide that evidence. NCMEC does not argue that the questions of Microsoft's willingness, efforts, or intent to assist law enforcement are irrelevant to the motions to suppress, but rather that Hines cannot testify to such matters.

When it comes to questions of intent, direct evidence of intent is sometimes unavailable; rather, intent may be proved by inference from circumstances and objective acts. *United States v. Magleby*, 241 F.3d 1306, 1312 (10th Cir. 2001); *see United States v. Bailey*, 327 F.3d 1131, 1140 (10th Cir. 2003) (observing that it is difficult to prove intent to defraud from direct evidence, but intent may be proved by inference). It is possible that Hines' testimony regarding Microsoft's actions may be relevant, circumstantial evidence of Microsoft's intent with regard to using PhotoDNA to aid law enforcement. Therefore, the Court concludes that the evidence is relevant and material to Defendant's defense. The motion to quash will be denied.

**II. NCMEC's Motion to Quash**

NCMEC moves to quash the subpoenas of its Senior Vice President and General Counsel, Yiota Souras, as well as that of its President and CEO, John Clark. As grounds for the motion, NCMEC first contends that the subpoenas are unreasonable, oppressive, and unduly burdensome

to NCMEC because both individuals are high level officers, or "apex" employees. With regard to Souras, NCMEC argues that as General Counsel the CyberTipline represents only a small fraction of the broad array of work she does for NCMEC. With regard to Clark, NCMEC points out that he has a similarly broad range of duties and responsibilities, with the CyberTipline representing only a small fraction of those and his knowledge of that program coming mostly from others. Second, NCMEC argues that due to the nature of their jobs, much of what Souras and Clark do know about the CyberTipline is protected by the attorney-client privilege or the work product doctrine. NCMEC points once again to John Shehan as the most appropriate NCMEC witness for the hearing. *See* Doc. 211 at 1.

**A. Are the Subpoenas Unreasonable and Oppressive?**

NCMEC argues that the subpoenas of Souras and Clark are unreasonable and oppressive because both witnesses are high ranking employees within NCMEC. It analogizes to the "apex" employee doctrine, drawn from civil litigation. "The doctrine recognizes that depositions of high-level officers severely burdens those officers and the entities they represent, and that adversaries might use this severe burden to their unfair advantage." *United States ex rel. Galmines v. Novartis Pharmaceuticals Corp*., 2015 WL 4973626, at *1 (E.D. Pa. Aug. 20, 2015) (citations omitted). The doctrine springs from Federal Rule of Procedure 26 which provides, "the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive[.]" Fed. R. Civ. P. 26(b)(2)(C).

The Tenth Circuit Court of Appeals has not adopted the apex doctrine. However, in at least one civil case this Court has done so. *See Tierra Blanca Ranch High Country Youth Program v.*

*Gonzales*, 329 F.R.D. 694, 697-98 (D.N.M. 2019) (Wormuth, J.). Quoting the District of Colorado in *Naylor Farms, Inc. v. Anadarko OGC Co.*, 2011 WL 2535067, No. 11-CV-01528-REB-KLM, at *1-2 (D. Colo. June 27, 2011) (unpublished), the Court in *Tierra Blanca Ranch* said:

> Under...the "apex doctrine," the Court may protect a high level corporate executive from the burdens of a deposition when any of the following circumstances exist: (1) the executive has no unique personal knowledge of the matter in dispute; (2) the information sought from the executive can be obtained from another witness; (3) the information sought from the executive can be obtained through an alternative discovery method; or (4) sitting for the deposition is a severe hardship for the executive in light of his obligations to his company. [...] [T]he party seeking to depose an executive bears an initial burden of making some showing that the executive has "unique personal knowledge" of some relevant issues.... Upon such a showing, the burden shifts to the executive to demonstrate by evidence that he in fact has no unique personal knowledge or that there exists one of the other three circumstances under which requiring him to sit for a deposition is inappropriate.

2011 WL 2535067, at *1–2 (internal citations omitted).

Although NCMEC acknowledges that the apex doctrine has its origins in civil litigation, it argues that the doctrine should apply with equal if not additional force in criminal cases, where discovery is even more restricted. However, this Court need not decide whether to apply the apex doctrine in a criminal case because, for the reasons set forth below, it concludes that Defendant has failed to show that the testimony is relevant and material to his defense.

**B. Is the Testimony Relevant and Material?**

The burden is on Defendant, as the party who served the subpoena, to demonstrate that the testimony he seeks is both relevant and material to his defense. *See U.S. v. Nixon*, 418 U.S. 683, 698-699 (1974). He has failed to meet that burden.

With regard to the content and relevance of Souras' testimony, Defendant states in pertinent part:

> Ms. Souras delivered a lecture for prosecutors and law enforcement officials at the 2017 Crimes Against Children Conference outlining how to circumvent the

> *Ackerman* opinion. Her testimony on this topic is material to show just how bias [sic] the culture at NCMEC is as well as to show how strong NCMEC's ties are to the law enforcement community. Ms. Souras went out in public—despite all of those other apex obligations—and taught law enforcement officials how to overcome the Tenth Circuit's holding in *Ackerman*. . . . Ms. Souras' testimony will be comprised of information regarding her presentation, which addressed "the holding in *U.S. v. Ackerman* and specific challenges to anticipate and address in the aftermath of this decision."

Doc. 222 at 7-8 (quotation in original). Thus, it appears that Defendant expects Souras to testify regarding her presentation in 2017—the contents of which this Court has ordered NCMEC to produce to Defendant. In light of the fact that the content of Souras' Powerpoint presentation will be available to Defendant at the hearing (and could be offered into evidence, as the Federal Rules of Evidence do not apply at a suppression hearing), it is far from clear what additional information her testimony about the speech could offer. The Court agrees with Defendant that the attorney-client privilege does not apply to Souras' presentation or to her communications with representatives of entities outside of NCMEC. *See* Doc. 222 at 9. But that does not explain how her testimony (outside of the contents of the presentation) is both relevant and material to the defense.

Defendant also presents emails showing that after Souras' 2017 presentation at the Crimes Against Children Conference, Detective Hartsock spoke to her about Defendant's case and then, as Souras is NCMEC's general counsel, emailed her the defense's discovery request and motion to suppress. Souras then forwarded the suppression motion to Microsoft's attorney, Courtney Gregoire. Defendant also points to emails showing that counsel for the Government emailed Souras hash values and file names associated with the two CyberTipline reports in this case, which Souras then sent along to Shehan. Without explanation, Defendant jumps to the conclusion that all of the above makes Souras a "material witness who was directly involved in this investigation."

Doc. 222 at 11. The Court, however, is unconvinced. Defendant has failed to explain how any of those emails make Souras a material witness or how her testimony is relevant to the issues to be decided at the suppression hearing.

Defendant's explanation regarding the necessity of Clark's testimony is similarly deficient. Defendant contends that only Clark can testify regarding "his own testimony before Congress and other political bodies," Doc. 222 at 12, such as his remarks to the European Parliament Committee on Civil Liberties, Justice and Home Affairs, in 2017. This is because Shehan either does not know or cannot recall Clark's public statements, such as "Clark's admission that Microsoft shared its PhotoDNA computer program with NCMEC so NCMEC could in turn share it with other ESPs," or "the United States' general inability to effectively deal with the child pornography problem either nationally or globally." *Id*. at 12. However, Defendant already has a transcript of Clark's remarks to the European Parliament, which appears to encompass the first statement in the preceding sentence. Defendant has not explained the relevance of Clark's alleged second statement. And, as with Souras, it is unclear to the Court what evidence Defendant intends to obtain from Clark and how that evidence is material.

The vagueness of Defendant's explanations for his need for Souras and Clark's testimony gives his argument the air of a fishing expedition. The outcome is not altered by the fact that the Court has found that, for the limited purpose of this case, NCMEC is part of the prosecution team. The Court is aware of no exception to the requirement that the proponent of a Rule 17 subpoena show that the testimony is both relevant and material. Therefore, the motion to quash should be granted.

**IT IS THEREFORE ORDERED** that *Jessica Hines's Motion Quash Subpoena* [Docs. 208, 209] is **DENIED** and *The National Center for Missing and Exploited Children's Motion to Quash Subpoenas to Its Senior Vice President, General Counsel, and President and CEO* [Doc. 210] is **GRANTED**.

**UNITED STATES DISTRICT JUDGE**