IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    *Plaintiff,*

v.                                                                    Case No. 1:16-CR-4571 JCH

GUY ROSENSCHEIN,

    *Defendant.*

## SECOND DECLARATION OF JOHN SHEHAN

I, JOHN SHEHAN, hereby state and declare as follows:

1.    I am currently employed as Vice President of the Exploited Children Division ("ECD") at The National Center for Missing and Exploited Children® ("NCMEC"). I have been employed by NCMEC since February 2000. As Vice President, I am responsible for supervising NCMEC's CyberTipline®. I am familiar with the operations of the CyberTipline, including the procedures involving the receipt and processing of reports by NCMEC and the procedures used to generate and maintain reports. The information contained in this declaration is based on my own personal knowledge and information to which I have access in my role as Vice President of ECD for NCMEC.

### I.   NCMEC Background

2.    NCMEC is a private, nonprofit corporation, incorporated under the laws of the District of Columbia. It was created to help find missing children, reduce child sexual exploitation, and prevent child victimization. NCMEC serves as the national clearinghouse for families, victims, private industry, law enforcement, and other professionals on information and programs related to missing and exploited children issues. NCMEC employs over 325 individuals and works with hundreds of volunteers to facilitate outreach and community child safety events nationwide.

## II.     NCMEC's CyberTipline

3.     NCMEC began operating the CyberTipline on March 9, 1998, to serve as the national online clearinghouse for tips and leads about child sexual exploitation. The CyberTipline was developed to further NCMEC's mission to help prevent and diminish the sexual exploitation of children by allowing members of the public and electronic service providers ("ESPs") to report apparent child sexual exploitation. NCMEC does not investigate or independently confirm the accuracy of information submitted to the CyberTipline. NCMEC acts only as a clearinghouse when processing CyberTipline reports.

4.     A secure CyberTipline was created in February 2000 to facilitate the reporting of apparent child pornography by ESPs. ESPs that voluntarily choose to register with NCMEC can submit CyberTipline reports using a secure electronic connection that enables them to upload content with their reports if they choose to do so. ESPs that choose not to register with the CyberTipline can submit a report through the online mechanism available to the public at www.cybertipline.org or by calling NCMEC's toll-free telephone number, 1-800-THE-LOST. Content cannot be uploaded with reports made through www.cybertipline.org or 1-800-THE-LOST.

5.     NCMEC requires that ESPs and members of the public select an Incident Type and Incident date and time when submitting a CyberTipline report. The Incident Type is a drop-down box from which the reporting party can select one of following categories: Child Pornography (possession, manufacture, and distribution); Online Enticement of Children for Sexual Acts; Child Sex Trafficking; Child Sexual Molestation (not by family member); Child Sex Tourism; Misleading Domain Name; Misleading Words or Digital Images on the Internet; and Unsolicited Obscene Material Sent to a Child. The Incident Type selected by the ESP or member of the public is included in Section A of the CyberTipline.

6.     NCMEC staff can reclassify the Incident Type based on their review of the report. NCMEC staff select a reclassification from a drop-down box that includes categories such as: "appears adult;" "child images (clothed);" "child images (unclothed);" and "Unconfirmed-Files Not Reviewed by NCMEC." NCMEC's reclassification of an Incident Type is included in Section C of the CyberTipline (as "NCMEC Classification") and in the Executive Summary of a CyberTipline report (as "Incident Type").

2

7.       NCMEC staff do not open or view every file uploaded in a CyberTipline report.  If NCMEC staff processed a CyberTipline report but have not opened or viewed the uploaded file(s), then they select "Unconfirmed-Files Not Reviewed by NCMEC" as the reclassified Incident Type.  This selection then appears as the "Incident Type" in the Executive Summary and as the "NCMEC Classification" in Section C of the CyberTipline report. The "Unconfirmed–Files Not Reviewed by NCMEC" designation indicates that NCMEC staff have not opened or viewed any uploaded files and does not reflect whether or not an uploaded file depicts apparent child sexual exploitation.

III.    **Law Enforcement Feedback**

8.       After a CyberTipline report has been made available to law enforcement, NCMEC may request feedback to help inform NCMEC staff on the handling of CyberTipline reports.  This is done to provide staff with closure regarding the reports they are processing and to assist with staff morale.  While NCMEC provides a mechanism for law enforcement to voluntarily provide feedback, this is not required, and feedback is received for only a small fraction of the CyberTipline reports made available to law enforcement.

9.       NCMEC shares law enforcement feedback, to the extent it is received, with ESPs on the CyberTipline reports they submit.  This is done for the same reason that feedback is shared with NCMEC staff – to provide closure regarding the reports ESPs are submitting and to assist with the staff morale of ESPs' content moderators.

IV.    **Hash Sharing Initiatives**

16.     When an ESP voluntarily uploads a file depicting apparent child pornography to a CyberTipline report, NCMEC uses hashing technology, including PhotoDNA ("PDNA") to create a hash value of the uploaded file.  Hashing technology creates an alphanumeric sequence, called a hash value, that is unique to a particular digital file.  Hash values can be used to detect duplicates of identical digital images.

17.     NCMEC offers a Hash Sharing Initiative through which ESPs can voluntarily elect to receive from NCMEC a set of hash values, including PDNA hashes referred to as signatures, of apparent child pornography image and video files to help reduce child sexual exploitation and prevent the continued dissemination of child sexual abuse images.

3

USAO EXHIBIT 12
Page 3 of 4

18.     NCMEC's Hash List is compiled according to the following criteria: (1) the hash values are derived from files uploaded by an ESP in a CyberTipline report; (2) the uploaded files were marked as viewed by the ESP or were marked as publicly available by the ESP, or the report resolved to an international location; and (3) the uploaded files depict an apparent prepubescent child or infant being subjected to sexual abuse; and/or a pubescent child who has been identified by law enforcement as subjected to sexual abuse.  Law enforcement does not contribute to NCMEC's Hash Sharing Initiative.

19.     There is also an Industry Hash Sharing Platform, where ESPs can share their own hash lists with each other.  This is separate from NCMEC's Hash Sharing Initiative and does not include NCMEC's Hash List.  Hash lists voluntarily contributed by ESPs to the Industry Hash Sharing Platform are compiled according to their own internal business practices and standards relating to the evaluation of apparent child pornography images.  NCMEC does not vet, review, approve or remove any hashes that an ESP may voluntarily choose to submit to the Industry Hash Sharing Platform.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

DATED:  Alexandria, Virginia, June 21, 2018.

_____
JOHN SHEHAN

COMMONWEALTH OF VIRGINIA        )
                                )
ALEXANDRIA CITY                 )

MARIA RACHELLE HARRIS
NOTARY PUBLIC
REGISTRATION # 7771007
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES
JUNE 30, 2022

Signed and sworn to before me, a Notary Public, of _____ County, Virginia, by <u>John Shehan</u>, on this 21 day of <u>June</u>, 2018.

_____
Notary Public

4