IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

**vs.**                                                                                       **CR. No. 16-4571 JCH**

**GUY ROSENSCHEIN,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on *Defendant Dr. Rosenschein's Motion for an Order Compelling Discovery* [Doc. 216], in which he asks the Court to compel the Government to produce certain materials to him. After reviewing the motion, the Government's response [Doc. 224], the National Center for Missing and Exploited Children's ("NCMEC's") response [Doc. 223][1], and the Defendant's reply [Doc. 241], the Court concludes that the motion should be denied.

## BACKGROUND

The Court has described the facts of this case many times, and it will not repeat that description here. However, the relevant procedural history is as follows: the Court's initial order governing discovery was entered on December 13, 2016. [Doc. 19] On January 2, 2018, the Court filed the stipulated Scheduling Order [Doc. 49], which set a deadline of March 2, 2018 for

---

[1] Defendant objects to NCMEC filing a response to his motion without leave of court. Although the Court agrees that NCMEC should have sought leave of court before filing its brief and must do so in the future, the Court will accept in on this occasion. The brief is relevant and helpful to the Court because it appears that much of the discovery that Defendant seeks would be in the possession of NCMEC, if it exists. However, Defendant does not dispute NCMEC's contention that he did not consult with NCMEC before filing his motion to compel.

discovery motions. That deadline, in turn, was extended to March 9, 2018. [Doc. 52] On that date, Defendant filed both a motion to compel NCMEC discovery [Doc. 57] and moved to serve NCMEC with a Rule 17(c) subpoena to obtain the same discovery. [Doc. 60]

Defendant filed several motions to suppress [Docs. 71, 74, and 77] which were originally scheduled to be heard on June 10, 2019. However, Defendant moved to continue that hearing, arguing that he needed time to resolve outstanding discovery issues in order to properly prepare [Doc. 145]. Despite the Government's opposition, the Court granted Defendant's motion to continue [Doc. 152]. After holding a status conference, on March 3, 2020 the Court reset the hearing on Defendant's motions to suppress for July 27, 2020. [Doc. 202]

On March 17, 2020, Defendant requested additional discovery from the Government, to which it responded the following day. The Government declined to produce the requested information. [Doc. 224-1] These discovery requests are presently at issue before the Court. Approximately two months later, on May 15, 2020, the Defendant filed his motion to compel. It was fully brief June 2, 2020.

Defendant's discovery requests that are the subject of this Memorandum Opinion and Order are as follows:

> 1.      The employment records for agents/analysts/liaisons of the United States Secret Service ("USSS") who were stationed to work at any of the facilities of NCMEC or designated to support NCMEC's statutory mission including, but not limited to, those locations in Virginia, California, Florida, New York, and Texas, from July 1, 2016 to August 30, 2016. Responsive information should include, but not be limited to, the names of such USSS agents/analysts/liaisons, their job titles and functions, and dates of assignment to work or collaborate with NCMEC. This request includes all employment records for USSS agents/analysts/liaisons assigned to collaborate with NCMEC's Exploited Child Unit ("ECU"), CyberTipline, or Child Victim Identification Program ("CVIP") programs or any other division or department of NCMEC.

2.      The Memorandum of Understanding that the USSS entered into with NCMEC that was effective during July and August of 2016 and any subsequent amendment, modification, or replacement of that MOU.

3.      The employment records for agents/analysts/liaisons of Immigration and Customs Enforcement ("ICE") who were stationed to work at any of the facilities of NCMEC or designated to support NCMEC's statutory mission including, but not limited to, those locations in Virginia, California, Florida, New York, and Texas, from July 1, 2016 to August 30, 2016. Responsive information should include, but not be limited to, the names of such ICE agents/analysts/liaisons, their job titles and functions, and dates of assignment to work or collaborate with NCMEC. This request includes all employment records for ICE agents/analysts/liaisons assigned to collaborate with NCMEC's ECU, CyberTipline, or CVIP programs or any other division or department of NCMEC.

4.      The Memorandum of Understanding that ICE entered into with NCMEC on June 22, 2004 and any subsequent amendment, modification, or replacement of that MOU. That MOU is addressed in the attached Department of Homeland Security document entitled "Privacy Impact Statement for the National Child Victim Identification System" dated August 9, 2009 and is discussed on page 8 at § 1.6 of that report.

5.      The employment records for agents/analysts/liaisons of the Federal Bureau of Investigation ("FBI") who were stationed to work at any of the facilities of NCMEC or designated to support NCMEC's statutory mission including, but not limited to, those locations in Virginia, California, Florida, New York, and Texas, from July 1, 2016 to August 30, 2016. Responsive information should include, but not be limited to, the names of such FBI agents/analysts/liaisons, their job titles and functions, and dates of assignment to work or collaborate with NCMEC. This request includes all employment records for FBI agents/analysts/liaisons assigned to collaborate with NCMEC's ECU, CyberTipline, or CVIP programs or any other division or department of NCMEC.

6.      The Memorandum of Understanding that the FBI entered into with NCMEC that was effective during July and August of 2016 and any subsequent amendment, modification, or replacement of that MOU.

7.      The employment records for agents/analysts/liaisons of United States Postal Inspection Service ("USPIS") who were stationed to work at any of the facilities of NCMEC or designated to support NCMEC's statutory mission including, but not limited to, those locations in Virginia, California, Florida, New York, and Texas, from July 1, 2016 to August 30, 2016. Responsive information should include, but not be limited to, the names of such USPIS agents/analysts/liaisons, their job titles and functions, and dates of assignment to work or collaborate with NCMEC. This request includes all employment records for any USPIS agents/analysts/liaisons

assigned to collaborate with NCMEC's ECU, CyberTipline, or CVIP programs or any other division or department of NCMEC.

8.      The Memorandum of Understanding that the USPIS entered into with NCMEC that was effective during July and August of 2016 and any subsequent amendment, modification, or replacement of that MOU.

9.      The list of the alleged victims that has been notified in this case in response to the FBI's and prosecution's obligation to notify alleged victims that their images have been recovered. Responsive information should include, but not be limited to, the names of the alleged victims that have been notified, the dates of notification, all correspondence between NCMEC, the FBI or the United States Attorney's Office concerning the notification of alleged victims, in particular the manner in which the FBI or the prosecutors became aware of the identity of these alleged victims via information produced by NCMEC. The defense does not oppose the use of pseudonyms for the purpose of creating this list.

10.     From June 1, 2016 to December 31, 2016 the list of every federal prosecution initiated by a CyberTipline report that originated from a Microsoft customer uploading an image of child sexual abuse to Microsoft's OneDrive or Azure cloud storage systems. This request does not include when a Microsoft user shared such an image on the Internet with another users but rather is directed specifically to when a Microsoft user uploads the image to one of these two Microsoft cloud storage systems.

11.     A copy of the computer algorithm used by NCMEC to (1) generate CyberTipline reports from electronic service providers or (2) serve notice to an electronic service provider to preserve case material after a CyberTipline report is created by NCMEC.

Doc. 216 at 1-3.

## LEGAL STANDARD

"[T]he *Brady* rule, Rule 16, and the Jencks Act exhaust the universe of discovery to which the defendant is entitled." *United States v. Presser*, 844 F.2d 1275, 1285 (6th Cir. 1988); *see also United States v. Griebel*, 312 Fed. Appx. 93, 95-96 (10th Cir. 2008) (noting the "[G]overnment's discovery obligations [ ] are defined by Rule 16, *Brady*, *Giglio* and the Jencks Act" and stating the defendant's request to expand his discovery rights beyond those three sources was unsupported by the law).

4

**A.     Rule 16**

Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure provides:

(E) Documents and Objects. Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
      (i) the item is material to preparing the defense;
      (ii) the government intends to use the item it its case-in-chief at trial; or
      (iii) the item was obtained from or belongs to the defendant.

Fed. R. Crim. P. 16(a)(1)(E). Although Rule 16's language is permissive, it does not authorize "a blanket request to see the prosecution's file," and a defendant may not use the rule to engage in a "fishing expedition." *United States v. Maranzino*, 860 F.2d 981, 985-86 (10th Cir. 1988) (citing *Jencks v. United States*, 353 U.S. 657, 667 (1957)). Rather, a defendant must make a *prima facie* showing of materiality before he is entitled to obtain requested discovery. *See United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990). "Neither a general description of the information sought nor conclusory allegations of materiality suffice; a defendant must present facts which would tend to show that the Government is in possession of information helpful to the defense." *Id.* Rule 16 also does not obligate the United States to "take action to discover information which it does not possess." *United States v. Badonie*, 2005 WL 2312480, at *2 (D.N.M. Aug. 29, 2005) (quoting *United States v. Tierney*, 947 F.2d 854, 864 (8th Cir. 1991)) (internal quotation marks omitted).

Evidence is "material" under Rule 16 if "there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, ... or assisting impeachment or rebuttal." *United States v. Graham*, 83 F.3d 1466, 1474 (D.C. Cir. 1996) (internal quotation marks omitted) (quoting *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir.

1993))(internal quotation marks omitted). "Although the materiality standard is not a heavy burden, the Government need disclose rule 16 material only if it enables the defendant significantly to alter the quantum of proof in his favor." *United States v. Graham*, 83 F.3d at 1474 (alterations, citations, and internal quotation marks omitted).

**B.     *Brady***

The *Brady* doctrine was established by the Supreme Court in *Brady v. Maryland*, 373 U.S. 83, 87 (1963):

> We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.

The United States Supreme Court in *Kyles v. Whitley*, 514 U.S. 419 (1995), described the responsibility of the government in dealing with *Brady*:

> But the prosecution, which alone can know what is undisclosed, must be assigned the responsibility to gauge the likely net effect of all such evidence and make disclosure when the point of "reasonable provability" is reached. This in turn means that the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police. But whether the prosecution succeeds or fails in meeting this obligation, the prosecution's responsibility for failing to disclose known, favorable evidence rising to a material level of important is inescapable.

*Id*. at 437-38. *Brady* also extends to evidence affecting witness credibility. *See Giglio v. United States*, 405 U.S. 150, 154 (1972).

The government is not required to produce evidence simply because it might be exculpatory. *United States v. Agurs*, 427 U.S. 97, 110, n. 16 (1976) ("It is not to say that the State has an obligation to communicate preliminary, challenged, or speculative information."); *United States v. Fleming*, F.3d 1325, 1331 (10th Cir. 1994) (noting "[t]he mere possibility that evidence is exculpatory does not satisfy the constitutional materiality standard."). Moreover, the Court does

6

not have a duty to directly supervise the government's disclosure of *Brady* information, as such supervision would necessitate a complete review of all material gathered during the government's investigation. *See United States v. McVeigh*, 923 F. Supp. 1310, 1313 (D. Colo. 1996). Rather, the duty to determine what disclosure is required under *Brady* rests with the prosecution. *See Bank v. Reynolds*, 54 F.3d 1508, 1517 (10th Cir. 1995); *McVeigh*, 923 F. Supp. at 1313. The Court should rely on the government's representations of its compliance with *Brady* unless the defendant shows cause to question them and the materiality of the evidence sought. *See McVeigh*, 923 F. Supp. at 1314; *see also Banks v. Dretke*, 540 U.S. 668, 696 (2004) ("[o]rdinarily, we presume that public officials have properly discharged their official duties."). *Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987) (noting that where a defendant only makes a general request for exculpatory material under *Brady*, the government decides which information must be disclosed).

## **DISCUSSION**

Defendant argues that the Government must produce the requested information in accordance with Rule 16 because it is relevant, material, and admissible with regard to the issues to be decided at the suppression hearing; must produce it under *Brady* because it is material to guilt or punishment; and must provide it under *Giglio* because it constitutes impeachment evidence. However, the Court concludes that the motion to compel is untimely, that the requests are overbroad or constitute a fishing expedition, and that a defendant is not entitled to impeachment evidence before a suppression hearing.

**I.     Timeliness**

Defendant filed his motion to compel more than two years after the March 30, 2018 deadline, and just a little less than three months before the week-long suppression hearing that the parties and the Court have strived to keep since it was reset on March 3, 2020. Defendant contends

that the discovery he requests is relevant to the question of whether NCMEC acted as a government agent in this case—a question that the parties have been litigating for well over a year and on which this Court has already ruled. Defendant justifies the lateness of his motion to compel by pointing to the fact that the Government and NCMEC have argued that NCMEC is not part of the prosecution team. Doc. 241 at 11-12. And yet, Defendant has had notice of that opposition since June 17, 2019, when NCMEC and the Government moved to reconsider the Court's ruling on the issue. [Docs. 160, 163]

In any event, the Court would ordinarily be loath to deny a motion to compel in a criminal case on the grounds of untimeliness where the motion otherwise had merit. That is not the case here, however. While this motion is undeniably late, there are even better, more substantive, reasons to deny it.

## II. Overbreadth

As discussed above, the principles that govern discovery in criminal cases do not authorize a defendant to conduct a "fishing expedition," i.e., a broad, generalized search for information in the hopes that the defendant might uncover something helpful to his case. *See United States v. Mayes*, 917 F.2d 457, 461 (10th Cir. 1990) (noting the Constitution "does not grant criminal defendants the right to embark on a broad or blind fishing expedition among documents possessed by the Government") (citation and internal quotation marks omitted). And yet, that is what Defendant's discovery requests appear to be.

Discovery requests 1, 3, 5, and 7 ask the Government to produce "all employment records" of employees of four different federal government agencies—the U.S. Secret Service ("the Secret Service"), Immigration and Customs Enforcement ("ICE"), the Federal Bureau of Investigations ("FBI"), and the U.S. Postal Inspection Service ("USPIS")—"who were stationed to work at any

8

of the facilities of NCMEC or designated to support NCMEC's statutory mission including, but not limited to, those locations in Virginia, California, Florida, New York, and Texas, from July 1, 2016 to August 30, 2016." The category of "employment records" is extremely broad and can include a great deal of sensitive and personal information, including the contents of an employee's personnel file. Defendant fails to explain why he would need to request this broad swath of information. It appears that Defendant seeks to show a relationship between NCMEC and the federal government by documenting that employees of certain agencies worked at NCMEC facilities. However, this request is far too broad, would encompass a large amount of irrelevant and private employee information, and is essentially a fishing expedition.

There is no requirement that "the prosecution make a complete accounting to the defense of all evidence in its possession," *United States v. Baxter*, 492 F.2d 150, 173 (9th Cir. 1973), and *Brady* does not require the prosecution to divulge every possible shred of evidence that could conceivably benefit the defendant, *Smith v. Secretary of New Mexico Department of Corrections*, 50 F.3d 801, 823-24 (10th Cir. 1995). Moreover, the accused has no right to rummage through the government's files, *United States v. Williams*, 580 F.2d 578, 585 (D.C. Cir. 1978), which is essentially what Defendant is asking to do here. *Brady* does not authorize wholesale discovery from every agency in the federal government or demand an "open file" policy. *See Kyles v. Whitley*, 514 U.S. 419, 436-37 (1995). The motion to compel a response to these requests will be denied.

Requests 2, 4, 6, and 8 are no better. They request Memoranda of Understanding between NCMEC and the Secret Service, ICE, the FBI, and the USPIS. First, Defendant has not shown that such memoranda exist or that he has any reasonable basis to believe that the Government possesses such documents; rather, it appears that he merely hopes they exist. Again, this is a broadly written

discovery request made in the hopes of finding something helpful to his case and constitutes a fishing expedition. *Brady* requires only the disclosure of information that is material in a constitutional sense. *United States v. Bagley*, 473 U.S. 667, 682 (1985) ("The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."). The mere possibility that discovery might help the defense does not establish materiality in the constitutional sense. "The criterion of materiality is met only if there is a 'reasonable probability' that the outcome of a trial would have been different had the evidence been disclosed to the defense." *United States v. Gonzales-Montoya*, 161 F.3d 643, 649 (10th Cir. 1998). However, according to NCMEC, "practically no responsive documents exist." Doc 223 at 4. Therefore, this overbroad request will be denied.

In Request 9, Defendant requests a list of the child pornography victims in this case who have been notified regarding the recovery of their images. In his motion, Defendant groups this request with Requests 1-8, arguing that this evidence is needed to create a record demonstrating that NCMEC is a federal law enforcement agency or an agent of the federal government. Doc. 216 at 3-4. However, he fails to explain how the requested information about the victims would further that end. Then in his reply, Defendant argues that Request 9 demonstrates that NCMEC should be considered part of the prosecution team in this case. As the Court has already ruled on that question, this request appears to be moot. The motion to compel will be denied as to Request 9.

In Request 10, Defendant asks the Government to compile a list of every federal prosecution initiated by a CyberTipline report that originated from a Microsoft customer uploading an image of child sexual abuse to Microsoft's OneDrive or Azure cloud storage systems from June 1, 2016 to December 31, 2016. Defendant argues that he will use this discovery as impeachment material. The Government, in turn, argues that Rule 16 does not require it to "create a catalog of

10

publicly available information, to include federal criminal prosecutions." Doc. 224 at 9. The Court agrees with the Government and will not compel it to answer this request.

Finally, in Request 11 Defendant asks the Government to produce "a copy of the computer algorithm used by NCMEC" to generate CyberTipline reports or to inform an electronic service provider to preserve evidence after a report is created. He argues that he needs this algorithm to show that there is no "chain of custody" to show that the images of child pornography used by law enforcement to support the search warrant for Defendant's home were the same images that were posted to Chatstep and analyzed by PhotoDNA. Doc. 216 at 5. He does not explain how access to a computer algorithm will help him do that. In any event, in its response NCMEC contends that it does not utilize a computer algorithm in the manner described by Defendant. [Doc. 223 at 3-4]. Accordingly, this request will be denied.

### III. The Government Is Not Obligated to Produce Impeachment Evidence Before A Suppression Hearing

Defendant contends that the purpose of most of his discovery requests is to obtain evidence to impeach Government witnesses at the suppression hearing. However, he points to no persuasive case law which holds that impeachment evidence must be disclosed before a suppression hearing.

Defendant acknowledges that this question has not been resolved in the Tenth Circuit. Doc. 241 at 9. *See United States v. Lee Vang Lor*, 706 F.3d 1252, 1256 n.2 (10th Cir. 2013) ("Whether *Brady*'s disclosure requirements even apply at the motion to suppress stage is an open question.").[2]

---

[2] The *Lee Vang Lor* court went on to cite with approval the D.C. Circuit's opinion in *United States v. Bowie*, 198 F.3d 905, 912 (D.C. Cir. 1999), in which it expressed doubt that *Brady* applies to suppression hearings: "Suppression hearings do not determine a defendant's guilt or punishment, yet *Brady* rests on the idea that due process is violated when the withheld evidence is material either to guilt or to punishment."(internal citation omitted). 706 F.3d at 1256 n.2.

11

Accordingly, a court attempting to answer that question must be influenced by the Supreme Court's 2002 decision in *United States v. Ruiz*, 536 U.S. 622, 629-32 (2002), in which it decided that neither the Constitution nor *Brady* requires the Government to disclose impeachment evidence before a guilty plea. On two separate occasions, this district court has concluded that under the reasoning set forth in *Ruiz*, there is no legal authority requiring the Government to disclose impeachment evidence before a suppression hearing. *See United States v. Luna*, 1:19-CR-2618-WJ, 2020 WL 835326 at *3, — F. Supp. 3d — (D.N.M. Feb. 20, 2020) (Johnson, C.J.) ("Defendant seeks to obtain impeachment material before a suppression hearing is held, but there is no legal authority for disclosure to be made on Defendant's timetable."); *United States v. Harmon*, 871 F. Supp. 2d 1125, 1151 (D.N.M. 2012) (Browning, J.) ("it is not likely that a prosecutor must disclose impeachment evidence before a suppression hearing in light of the Supreme Court's conclusion in *United States v. Ruiz*.")

    Defendant offers no persuasive authority to the contrary. The only cases that Defendant cites are circuit decisions that predate *Ruiz*. *See* Doc. 241 at 9, citing *United States v. Barton*, 995 F.2d 931, 935 (9th Cir. 1993) and *Smith v. Black*, 904 F.2d 950, 965-66 (5th Cir. 1990). The courts in those cases did not have the benefit of *Ruiz* when they reached their conclusions. Thus, this Court finds them to be unpersuasive authority.

    The Defendant has not demonstrated that the Court should deviate from the rulings in *Harmon* and *Luna*, and his motion to compel will be denied for that additional reason.

**IT IS THEREFORE ORDERED** that *Defendant Dr. Rosenschein's Motion for an Order Compelling Discovery* [Doc. 216] is **DENIED**.

_____
**UNITED STATES DISTRICT JUDGE**